ATLAS POWDER COMPANY

*v.*

HENRY EDWARD GRIMES

(*Knoxville,* September Term, 1955)

(May Session, 1956.)

Opinion filed June 8, 1956.

207

Campbell & Campbell, Chattanooga, for plaintiff in error.

Dietzen, Graham, Dietzen & Brock, Chattanooga, for defendant in error.

Mr. Justice Burnett delivered the opinion of the Court.

This suit was brought under the Workmen's Compensation Act, T.C.A. sec. 50-901 et seq., to recover compensation and medical expenses necessary from an accident sustained by an employee. The trial court gave judgment for the petitioner and found that he was totally dis-

abled from April 27, 1954, to May 18, 1955. From this period there was deducted a period from September 30, 1954, until February 15, 1955, both inclusive, in which the employee suffered from a kidney ailment and was operated on for the same. The court also found that the employee was entitled to temporary total disability from April 27, 1954, through September 29, 1954, less compensation already paid, and from February 18, 1955, to May 19, 1955, and in addition thereto a 20% permanent partial disability to his body as a whole since May 18, 1955. The court also found that the claimant was entitled to recover medical and hospital expenses in the sum of $1,111.90, for treatment to his back injury, and an additional sum of $652, as compensation for temporary total disability and a further sum of $5.60 weekly for a period of 265 weeks, as compensation for 20% permanent partial disability. From this judgment the employer has appealed and assigns some nineteen errors and brief and argument in support thereof. We have heard oral argument on the question and after reading the record and the briefs and making some independent study of the matter we are now ready to dispose of the same.

The petitioner was employed as a laborer at the Atlas Powder Company at the time he was injured on April 27, 1954. At that time he was engaged in unloading lumber when struck by a plank across his lower back as he was stooped over. The plank's dimensions were 1 inch by 7 or 8 inches and 12 to 14 feet long. The petitioner was knocked to the ground and was unable to arise, having been temporarily or momentarily, at least, knocked unconscious. At the time of his injury he was earning considerably above the maximum allowable under the

compensation law. Immediately after his injury he was removed by ambulance to the Plant Hospital but was released shortly thereafter. The next day the Plant authorities sent him to their doctor, Doctor Robertson, but at the time they made no offer to him of a choice of one of three doctors.

As viewed from the employee's viewpoint and as accepted by the trial court, Doctor Robertson hospitalized the petitioner for 16 days. On the first examination by Doctor Robertson he noted that petitioner walked with a left-sided hip limp, moved with apparent low back pain, had swelling of the left lumbar muscle, and complained of severe pain upon pressure. Movements at that time were severely limited. There was no atrophy at the time, indicating that the petitioner had not had any back trouble of long duration prior to the accident. Dr. Robertson concluded at that time that the petitioner had an acute severe contusion of the left lumbar muscle, and that he had a large kidney stone. Petitioner was admitted to the hospital for absolute bed rest and daily physical therapy. When he was released from the hospital he was advised to continue sleeping on a hard board and to continue daily physical therapy. He continued under the care of the company physician, Dr. Robertson, until July 19, 1954, during which time his motions were limited and there were repeated complaints by him of pain at each visit that he made to the Company doctor. Petitioner was repeatedly advised by this doctor to return to work and was discharged from this doctor's care while still complaining of pain. At the time of the discharge the doctor still did not feel that the petitioner was able to do heavy work and estimated that he would be disabled for an additional two month period.

Apparently the petitioner felt that he was not getting the necessary treatment (this is a natural human feeling when one is suffering) and some two or three days after he had been discharged by the Company doctor, he went, upon recommendation of his attorney, to an orthopedic surgeon, July 22, 1954. At this time he was complaining of dull aching pain in the lower part of his back, exaggerated by lifting and bending. He was placed by this doctor on a routine of conservative care which did not relieve his pain and complaint. This doctor at that time did not consider him able to do heavy work. On August 14,1954, while the petitioner was attempting to do moderately heavy work in tying some brush onto a jeep his symptoms became increased and he went to his doctor and complained of severe pain. Thereafter he failed to improve.

The petitioner was fitted, by the doctor of his selection, on August 18, 1954, with a brace and was thereafter hospitalized on September 15, 1954, and placed on a hard bed, traction being applied to his left leg and receiving daily specific physical therapy treatment. X-rays were taken at this time and it was discovered that he had a "large staghorn type calculous in the left kidney". As a result an operation was performed to relieve the employee of this disability. The petitioner remained in the hospital as a result of this kidney trouble from September 14, 1954, until September 23, 1954, when he was placed in the care of another doctor who was a specialist in kidney trouble. This doctor operated and treated him for this kidney trouble until February 1955. All during this period it was necessary for the orthopedic surgeon who had been selected by the employee to examine and give advice, etc., in reference to the herniated disc that was

found in this man's back and which is testified to by Doctor Donaldson as:

"In my opinion the accident was sufficient to cause the pathology which we found at the time of surgery, and which I expected to find all through those months." This is in answer to a question of whether or not this herniated disc was removed from the back by this orthopedic surgeon as a result of the accident which he suffered on April 27, 1954.

One reading the testimony of this doctor is convinced that this doctor is convinced of the fact that it was the injury which the employee received on April 27, 1954, that caused this injury to the back which in turn resulted in the operation performed by this orthopedic surgeon in remedying this herniated disc.

Dr. Donaldson testified that the petitioner was unable to work from the time that he first saw him on July 22, 1954, until the date of the trial on May 18, 1955. Prior to this time the Company doctor had likewise advised him that he was unable to work. The period that we have set out above wherein he was not able to work was when he was being operated on for the trouble to his kidneys. For this time and for this operation no finding is made against the employer. Complaint is made for a part of the orthopedic surgeon's charge wherein this orthopedic surgeon was treating the man for the back trouble which was caused by the injury during this period of time. It seems to us that that is a reasonable charge.

The Company doctor found that the employee had this trouble with his kidney but this doctor did not inform the employee of this fact. The Company doctor also found that the man was suffering with muscle spasm which would indicate a spinal injury. His initial medical

report made a very few days after the injury stated that hospitalization and conservative treatment would lessen the degree of permanent disability to the petitioner, all of which indicates to us a feeling on the part of this doctor that at that time the man might have a permanent disability. These doctors agree that a herniated disc will sometimes move out of position and back into position and therefore produce no symptoms of a herniated disc at the time it is in position. When the man is using the conservative treatment that the doctors recommend by sleeping on hard boards, etc., the disc will probably return to its normal position and the symptoms will correspondingly decrease. If a man returns to any kind of active work these symptoms then increase.

Doctor Donaldson, the doctor selected by the employee, testifies that after this operation the man was improving very rapidly and had made a remarkable improvement but that he would possibly have 20 to 25 percent disability to his body as a whole as a result of this injury. The doctor likewise testifies that it is not at all unusual for a period of 10 months to elapse between a back injury of the kind and the time when an operation becomes necessary.

The proof shows that the Company employed the doctor who was called here several times during each year to treat its employees. This doctor who was employed by the Company had never performed a laminectomy, nor did he feel qualified to perform a myleogram which is one of the recognized tests for herniated disc though a negative finding under this test does not mean that the man did not have a herniated disc.

Assignments of error, 1, 2, 3, 4, and 8, relate to the fact that the petitioner should not recover compensation for

this herniated disc operation because it is argued that it did not occur within the course and scope of his employment.

As we have indicated above the record clearly supports the finding of the trial judge that the man was injured by being struck in the back this way and then this Dr. Donaldson's testimony is to the effect that it was this injury that caused the herniated disc which had to be operated on by him. As said above this operation, according to Dr. Donaldson, had produced results and the man at the time of the testimony was practically well. Be that as it may, there is this positive testimony in the record which the trial judge heard and believed and on it he based his finding.

Where there is any material evidence in a compensation case to support the finding of the trial court, such a finding must be sustained by this Court on appeal. *Stone & Webster Eng. Corp. v. Davis,* 191 Tenn. 42, 231 S.W.2d 376.

Assignments of error, 5, 6, 7, 9 and 15, are very persuasive arguments made on behalf of the employer that the suffering and ailment of the employee was due to the kidney ailment for which he had an operation as above set forth rather than from the herniated disc. In this argument it is likewise argued that a part of the medical award made herein was for expenses for treating such a kidney ailment. In the first place these assignments present in a little different way the same argument as made in those first above considered, that is, that there was no proof to support the fact that the herniated disc for which he was operated on was caused by an injury growing out of his employment. As we said above the record amply and fully supports the fact that

the man did have a rather severe injury on April 27, 1954, and it is testified to by Dr. Donaldson that this was the injury that caused him to have to operate on this herniated disc and is the injury for which the man has suffered all the way through. Of course during this same period he did have a kidney ailment but the lower court held that this kidney ailment was not the cause of his disability. All of these things are clearly supported by very material evidence in the record.

There is no award made for medical expenses incurred as a result of the ailment to the kidney. An entirely different doctor and a specialist in kidney ailments was called in and operated and treated this man for the kidney ailment. During the time that he was laid up with this kidney ailment and operation this period for which compensation was allowed was deducted for this kidney ailment period. During that period the doctor who treated him for the main injury, that is, the herniated disc, did have to exercise certain supervision and advice in reference to trying to heal the herniated disc and it was for this period that he charged $178 and we think, as said above, this is properly allowable.

■■ The main point as presented in this record is presented in Assignments 9, 10, 11 and 14, which relate to the award by the trial judge of $1,111.90 for medical attention procured by the petitioner in the treatment of the injury sustained as of April 27, 1954. The very able argument is made that this amount of medical expenses was accrued by the employee employing a doctor who was not the doctor selected by the employer and that the statute, T.C.A. sec. 50-1004, Williams Code, sec. 6875, provides that the employer shall furnish and select the doctor and not the employee. This Court in 1942 in the

opinion of *Irwin v. Fulton Sylphon Co.*, 179 Tenn. 346, 166 S.W.2d 610, held as the employer contends, that is, that the employer was entitled to select the doctor and when he did not do so but the employee went out on his own regard, without excuse, and employed a doctor then that the employer would not be liable for these medical expenses.

In the first place this opinion, *Irwin v. Fulton Sylphon Co., supra,* is based on the section of the Code then in force, 6875, Williams Code, which has been materially changed by the Acts of the Legislature since that time. The Code Section in force at the time of this injury was entirely different from that as set out in *Irwin v. Fulton Sylphon Co.* The Court in the Irwin case quotes and copies the pertinent sections of the Code, as then in force, in the holding in that case. The first part of this Section is now entirely different from what it was then. The Section insofar as here applicable, as now in force, provides that:

"the employer or his agent shall furnish free of charge to the employee such medical and surgical treatment, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus and hospitalization, including such dental work made reasonably necessary by accident as herein defined, as may be reasonably required. *The injured employee shall accept the same; provided, that the employer shall designate a group of three (3) or more reputable physicians or surgeons if available in that community from which the injured employee shall have the privilege of selecting the operating surgeon or the attending physician; provided, however, that total liability of the employer under this section shall not exceed the sum of one*

*thousand and five hundred dollars, ($1,500)."* (Emphasis ours.)

By comparing this paragraph to the same paragraph as quoted in the Irwin case it will be seen that it is entirely different.

We will merely point out one or two things to show that the Irwin case has absolutely no application to the present situation. In the first place at the time the Irwin case was written the Code did not provide that the employer should designate at least three physicians of whom the employee could take his pick. Now the Code so provides and in the instant case this provision of the statute was not complied with. The employee was not given the right to pick one of three doctors. Thus the argument of the employer fails in this particular. This argument fails again, too, because the proof here shows and it was held by the trial judge, based on proof, that the doctor selected by the company did not do two of the things necessary for an injury of this kind. One of them was to make an exploratory examination and the other was to do the necessary operation that was here done. Clearly when the employer fails to provide three doctors from whom the employee shall select and then selects a doctor who was not competent to do two of the things necessary for the kind of a disability that this man had this contention of the employer cannot hold up. The employee in selecting a doctor then of his own has a perfect right to do so and the employer would be liable within the statutory amount as fixed, that is, $1,500 for these medical expenses.

The record does not show that the expenses here accrued in this operation were unreasonable. The fact is the record shows that it was the same price charged for

the operation plus a reasonable medical expense for care due to complications. As far as the record shows there is absolutely nothing unreasonable about this charge and we approve it.

The Statute in question in force when the Irwin case was written has a limit of $100 to be paid for medical expenses. Over the period of years which has followed since 1942, the Legislature has realized that the economic conditions of the Country have changed and have constantly increased the amount of the medical expenses that the employer is liable for up to the present statutory amount of $1,500.

It is argued that since the final paragraph in the Code Section in question, T.C.A., sec. 50-1004, Williams Code, sec. 6875, provides that:

"If an emergency, or on account of the employer's failure or refusal to provide the medical care and services required by this law, the injured employee or his dependents may provide the same, and the cost thereof, not exceeding one hundred dollars ($100) shall be borne by the employer; * *."

that the medical expenses here should be so limited. This provision was likewise in the Code Section when it was originally enacted and is the same provision that was in the section when the Irwin case was decided. This paragraph in the section does not relate to the question here involved. If it did we think that by reason of the fact that it has been there all the time when the Legislature has had this Section before it and has increased the amount of the medical expenses to be paid yet did not interfere with this they clearly felt it had another meaning. We think that when the employee has had to

select his doctor under the circumstances of the instant case this section clearly provides that the employer shall be liable for the amount of the reasonable and necessary expenses for this injury up to and including the statutory amount of $1,500.

During all the time that the Company doctor was treating the employee the employee was complaining that he continued to suffer and hurt and even with this the employer did not offer him any further medical attention. This doctor selected by the employer found this kidney ailment that the man had but he did not inform the man of that and did not make any suggestions that the man get one specialized in kidney trouble to look after this. All of these things indicate clearly the employee's right to select a physician of his own choosing especially when the statute as now made and provided was not complied with by the employer.

The counsel for the employee makes this very pertinent observation in reference to the argument here made that the amount of the medical expenses should be limited to $100. He says:

"If the defendant's insistence is followed and its liability limited to one hundred dollars, the effect of such a ruling would be to make inoperative that portion of the statute fixing the limit of employers' liability at fifteen hundred dollars, and the provisions thereof would be directly in conflict. An employer could merely refuse to furnish medical services, relying upon the employee's natural desire to overcome a physical handicap and thereby compel the employee to furnish his own medical services at only minor cost to the employer."

After a very thorough and careful consideration of this matter we must affirm the judgment of the trial court with costs.