BURLINGTON INDUSTRIES, INC., d/b/a Harriman Hosiery Company and Liberty Mutual Insurance Company, Appellants,

v.

Betty M. CLARK, Appellee.

Supreme Court of Tennessee.

Oct. 9, 1978.

John W. Wheeler, Hodges, Doughty & Carson, Knoxville, for appellants.

J. Polk Cooley, Rockwood, for appellee.

## OPINION

COOPER, Justice.

This appeal is limited to the single issue: Did the trial judge commit error in ordering appellants to pay medical bills incurred by Betty M. Clark in the course of her treatment by Dr. Geron Brown? It is undisputed that the medical expenses were incurred in treatment of an injury sustained by Mrs. Clark while in the employ of appellant, Burlington Industries, Inc. The dispute over liability for payment of the expenses is predicated on the fact that Dr. Brown was selected as a treating physician by Mrs. Clark, not her employer.

Mrs. Clark operated a knitting machine for the Burlington Industries at its Harriman, Tennessee, plant. On February 2, 1976, while performing the work assigned to her, Mrs. Clark stepped in oil that had leaked from her machine and fell to the floor, she sustained a hard blow to her "tail bone." She complained of pain and, consequently, was taken to see the plant nurse. No other medical attention was tendered Mrs. Clark. The next morning Mrs. Clark's husband took her to the emergency room of the Oak Ridge Hospital for treatment. On examination, the emergency room physician suggested that Mrs. Clark see Dr. Spray, an orthopedic surgeon practicing in Oak Ridge. Mrs. Clark followed up the suggestion and found that it would be "a week or so" before she could be examined by Dr. Spray.

The next day, which would be the second day after her fall, an insurance adjuster representing Burlington's insurance carrier came to see Mrs. Clark. Without objection from Mrs. Clark, the adjuster made an appointment for her to see Dr. Archer Bishop, an orthopedic surgeon practicing in Knoxville. So far as the record shows, no other doctors were suggested or recommended by the adjuster, nor did Burlington furnish Mrs. Clark with a list of three or more physicians so that she could make a choice of a treating physician.

Mrs. Clark was treated by Dr. Bishop from February, 1976, until December, 1976. During this time, Dr. Bishop arranged for a myelogram and a caudal block to be performed, caused Mrs. Clark to be seen in consultation by two neurosurgeons, a gynecologist, and a psychiatrist; however, Dr. Bishop remained the treating physician. On discharging Mrs. Clark as a patient, Dr. Bishop stated, according to Mrs. Clark that "he had done all he could."

Mrs. Clark testified that throughout the period she was undergoing treatment prescribed by Dr. Bishop, and at the very moment she was discharged as a patient, she suffered constant and severe pain in the low back area. On being discharged as a patient, Mrs. Clark went to her family physician, not for the purpose of evaluation of her physical condition but to secure medication for her pain. Her family doctor, however, sent her to Dr. Geron Brown, a member of the orthopedic group practicing in Oak Ridge, for examination.

On examining Mrs. Clark and during treatment of her injury, Dr. Brown found several positive objective signs that Mrs. Clark had "a herniated nucleus pulposus" caused by her fall on February 2, 1976. Dr. Brown expressed the opinion that as the result of her injury, Mrs. Clark had a permanent physical impairment of twenty-five percent to the body as a whole. He also recommended that Mrs. Clark undergo surgery in order to be relieved of her constant back pain. Surgery had not been performed at the time of trial, primarily because appellants had questioned their liability for payment of medical expenses incurred by Mrs. Clark.

Accepting Dr. Brown's testimony, the trial judge found that Mrs. Clark was totally disabled from her injury for a period of forty-eight weeks and that she had a permanent partial disability of forty percent to the body as a whole. The trial judge also ordered appellants to pay all medical expenses, including the charges by Dr. Brown and the cost of hospitalization ordered by him.

T.C.A. § 50–1004 provides that the employer shall furnish within certain limitations

such medical and surgical treatment, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus, such nursing services as ordered by the attending physician and hospitalization, including such dental work made reasonably necessary by accident as herein defined, as may be reasonably required; . . . The injured employee shall accept the medical benefits afforded hereunder; provided, that the employer shall designate a group of three (3) or more reputable physicians or surgeons not associated together in practice if available in that community from which the injured employee shall have the privilege of selecting the operating surgeon or the attending physician; . . .

■ As was pointed out in *Employers Insurance of Wausau v. Carter*, 522 S.W.2d 174, 176 (Tenn.1975),

Referring the employee to a single physician does not comply with the statute; it is an usurpation of the privilege of the employee to choose the ultimate treating physician. See *Holston Valley Community Hospital v. Dykes*, 205 Tenn. 336, 326 S.W.2d 486 (1959). An employer who would claim the benefits of the statute should, himself, be required to comply with it. Likewise, the employee must comply with this statute if he is to be entitled to receive its benefits.

■ Where the employer fails to give the employee the opportunity to choose the ultimate treating physician from a panel of at least three physicians selected by the employer, he runs the risk of having to pay reasonable medical expenses incurred for treatment of the employee's injuries by a physician of the employee's own choosing. See *Employers Insurance of Wausau v. Carter*, 522 S.W.2d 174, 176 (Tenn.1975); *Holston Valley Community Hospital v. Dykes*, 205 Tenn. 336, 326 S.W.2d 486 (1959). As pointed out in *Holston Valley Community Hospital v. Dykes*, supra, "we are not agreeable to placing the decision [of whether the employee is liable for medical expenses incurred by the employee on his own] solely on the fact that the employer did not comply with this provision of the law and thus to leave it open to any employee to act on his own initiative under all circumstances in quitting the doctor assigned him by the employer and then switching over without notice to the employer to another doctor." The decision turns on the issue of whether, under the circumstances, the employee was justified in obtaining further medical service, without first consulting the employer. *Tom Still Transfer Co. v. Way*, 482 S.W.2d 775 (Tenn.1972); *Holston Valley Community Hospital v. Dykes*, supra.

■ In the instant case, no instructions or advice was given Mrs. Clark by her employer or the insurance adjuster relative to the selection of a physician. Neither did they complain of the fact that Mrs. Clark incurred a medical expense in initially seeking treatment at Oak Ridge Hospital, nor did they tell her that it would be improper for her to be treated by the orthopedic group in Oak Ridge, to whom the emergency room doctor referred her. To the contrary, they shifted her to Dr. Bishop on the basis they could secure treatment for her at an earlier time. She faithfully did what Dr. Bishop asked her to do. He discharged her as a patient at a time when she was suffering from intense pain, telling her "I have done all I can do for you." What would be the natural reaction of an employee, who has only a ninth grade education, under these circumstances?

In a similar case the court, in requiring the employer to pay the medical expenses of the second doctor, commented:

When we consider the fact that this employee was a menial workman, a janitor at the hospital, and of very little education and able to do only the work of a common laborer, we must realize that under the circumstances it never occurred to him that he might have obviated this lawsuit if he had gone back to his employer and requested that he be given another doctor. On the other hand, the employer was first at fault in not complying with the law in offering the employee a choice of one among three or more

reputable physicians and if they had complied with the law, they would be in a far different position from what they are now. We are not agreeable to placing the decision of this question solely on the fact that the employer did not comply with this provision of the law and thus to leave it open to any employee to act on his own initiative under all circumstances in quitting the doctor assigned him by the employer and then switching over without notice to the employer to another doctor. We do think, however, that on the facts of this case the trial judge on the evidence before him and with his opportunity to see the parties and observe particularly this petitioner was justified in allowing such part of the medical expense that he did. *Holston Valley Community Hospital v. Dykes*, 205 Tenn. 336, 326 S.W.2d 486, 489.

*See also Atlas Powder Co. v. Grant*, 200 Tenn. 617, 293 S.W.2d 180 (1965), wherein the court required the employer to pay medical expenses incurred by the employee. The court there found that the employee acted in good faith in seeking the services of a physician other than the one selected by the company. The court emphasized that the employee had cooperated with the company and its physicians, and had sought out the services of an independent physician only after he found out that he was not cured and differences had arisen between the employee and the company's physician.

In the instant case there is no question but that Mrs. Clark acted in good faith when she sent to her family physician. It was a natural reaction to having been dismissed by the company physician in the face of the known fact she was suffering from constant and severe pain. Further, as heretofore noted, there is nothing in the record to indicate that Mrs. Clark knew that she should consult her employer before following up on her referral to an orthopedic specialist by her family physician. Neither the adjuster for the insurance company nor her employer told her, though they had the opportunity to do so when they steered her to Dr. Bishop. Under these circumstances, we agree with the trial judge that Mrs. Clark was justified in seeking medical care of her own choosing for which the non-complying employer is liable. *See: Holston Valley Community Hospital v. Dykes*, supra; *Atlas Powder Co. v. Grant*, 200 Tenn. 617, 293 S.W.2d 180 (1956); *Atlas Powder Co. v. Grimes*, 200 Tenn. 206, 292 S.W.2d 13 (1956).

Judgment affirmed. Costs incident to the appeal are adjudged against the appellants, Burlington Industries, Inc., d/b/a Harriman Hosiery Company and Liberty Mutual Insurance Company.

HENRY, C. J., and FONES, BROCK and HARBISON, JJ., concur.