**UNITED STATES FIDELITY AND
GUARANTY COMPANY,**
Appellant,

v.

**Billy Ray MORGAN, Appellee.**

Supreme Court of Tennessee,
at Knoxville.

July 16, 1990.

Joe Nicholson, Nicholson and Garner, Maryville, for appellant.

Vickie V. Valentine, Eugene B. Dixon, Koella and Dixon, Maryville, for appellee.

## OPINION

COOPER, Justice.

This is an appeal by the employer's workers' compensation insurance carrier testing the award of permanent partial disability benefits, and the order that the employer pay past and future medical expenses necessary to the treatment of the employee's injury. On review, we find that the judgment of the trial court is supported by the preponderance of the evidence, and it is affirmed.

Billy Ray Morgan was employed as an automobile line mechanic by the Twin City Buick Company of Alcoa, Tennessee. On August 28, 1985, he attempted to remove the wheels from a customer's automobile in order to check the left rear brake, which was "grabbing." The automobile shifted on the elevated rack, pinning Mr. Morgan's arms between the wheel and the body of

the automobile. Mr. Morgan completed the work-day, and worked part of the next day. He was then sent by his supervisor to see the company doctor, Dr. Stephen Pershing. In turn, Dr. Pershing referred Mr. Morgan to Dr. James E. Ricciardi, a local orthopedic surgeon.

Dr. Ricciardi eventually diagnosed Mr. Morgan as suffering from right tardy ulnar nerve palsy and undertook to reduce the resulting numbness and weakness in Mr. Morgan's right hand and arm by transposing the right ulnar nerve. The operation was only partly successful. Dr. Ricciardi was unable to determine any other medical cause of plaintiff's continued pain, partial numbness of the hand and fingers, and lack of strength in the right hand and arm. Dr. Ricciardi considered the possibility that Mr. Morgan might be suffering from "reflex sympathetic dystrophy," but rejected the diagnosis on the basis that the classic objective symptoms of the condition were not evident. On August 13, 1986, he discharged plaintiff to return to work "when he feels that he is capable of doing his job." Dr. Ricciardi also told Mr. Morgan that "[he] did not understand the problem that [Mr. Morgan] was having that [he had] nothing further to offer him in the terms of either therapy or surgical treatment." Dr. Ricciardi declined to give an estimate of Mr. Morgan's permanent disability but did state that a person who undergoes an ulinar transposition usually has an anatomical disability of ten to fifteen percent to the arm.

After being discharged by Dr. Ricciardi, Mr. Morgan sought other medical treatment and submitted the charges to defendant for payment. The defendant refused to pay any of the charges as submitted, on the basis that the only physician it had authorized to treat Mr. Morgan was Dr. James E. Ricciardi. One of the letters from defendant indicated that Dr. Ricciardi was the physician of Mr. Morgan's choice. This statement is not borne out by the record. To the contrary, the record shows that Mr. Morgan was never given a choice of physicians. The employer selected the initial treating physician, who, in turn, selected Dr. Ricciardi.

One of the later treating physicians, Dr. J. MacDonald Burkhart, diagnosed the cause of Mr. Morgan's condition as reflex sympathetic dystrophy, which he described as "a pain response related to the sympathetic fibers that surround the blood vessels of an extremity, or any part of the body—and it is an abnormal response to pain resulting in pain itself—increased pain, resulting in discoloration, resulting in swelling, or resulting in limitation of use, and is a condition that potentiates itself because of persistent pain." He also found that Mr. Morgan had sustained an impaction fracture of the small bone in the right wrist. In treating the reflex sympathetic dystrophy, Dr. Burkhart hospitalized Mr. Morgan on three occasions for stellate blocks and prescribed occupational therapy and physical therapy for intense workouts of the right arm. After the treatment, there was less objective evidence of the condition, and tests revealed marked improvement in Mr. Morgan's physical condition. However, Dr. Burkhart expressed the opinion that Mr. Morgan has a permanent partial anatomical disability of twenty percent of the right arm.

Mr. Morgan testified that his formal education had terminated at the completion of the ninth grade and that his work experience has been limited to the automobile repair business. He further testified that he still suffers pain in the right arm, shoulder and hand, and that his right arm is weak, that he can not hold or use tools in his right hand, and cannot function as a line mechanic. He further testified that his experience in the automobile repair has qualified him to work as a shop foreman or supervisor, and that he is presently employed in that capacity.

Dr. Craig Colvin, who qualified as a vocational expert, testified that Mr. Morgan now has a vocational disability of seventy-five to eighty percent.

■ The trial judge concluded from this evidence that Mr. Morgan has a permanent partial disability of sixty percent to the upper right extremity as the result of the job related injury of August 28, 1985. De-

fendant insists the percentage of disability awarded is "extravagant", not supported by the medical evidence, and that the trial judge gave too much weight to the testimony of the vocational expert. We find no merit in these contentions, but are of the opinion that the percentage of disability found by the trial judge is in accord with the preponderance of the evidence. There is no question but that plaintiff has a permanent partial anatomical disability to the upper right extremity as the result of the on-the-job accident, and that the resulting disability greatly limits the jobs available to plaintiff. Retraining programs available to plaintiff are limited by his lack of formal education, as well as by his disability and limited area of work experience.

The trial judge also ordered the defendant to pay medical expenses incurred by plaintiff without the express authorization of the defendant, excepting only the expense of the first examination after Dr. Ricciardi informed plaintiff that he had nothing further to offer him in the way of treatment. The defendant insists that this was error, since there is no showing that Mr. Morgan consulted with his employer or its insurer prior to incurring medical expenses.

■■ T.C.A. § 50–6–204 requires the employer to furnish medical and surgical treatment reasonably necessary to treat an injury received in a work related accident. Paragraph (a)(4) requires the employee to accept medical benefits furnished by the employer,

> provided, that the employer shall designate a group of three (3) or more reputable physicians or surgeons not associated together in practice if available in that community from which the injured employee shall have the privilege of selecting the operating surgeon or the attending physician; ...

Where the employer fails to give the employee the opportunity to choose the ultimate treating physician from a panel of at least three physicians, he runs the risk of having to pay the reasonable cost for treatment of the employee's injuries by a physician of the employee's choice. *See Em-*

*ployers Insurance of Wausau v. Carter,* 522 S.W.2d 174, 176 (Tenn.1975); *Holston Valley Community Hospital v. Dykes,* 205 Tenn. 336, 326 S.W.2d 486 (1959). As pointed out in *Holston Valley Community Hospital v. Dykes, supra,* "[we] are not agreeable to placing the decision [of whether the employer is liable for medical expenses incurred by the employee on his own] solely on the fact that the employer did not comply with this provision of the law and thus to leave it open to any employee to act on his own initiative under all circumstances in quitting the doctor assigned him by the employer and then switching over without notice to the employer to another doctor." The decision turns on the issue of whether, under the circumstances, the employee was justified in obtaining further medical services, without first consulting the employer or its insurer. *Burlington Industries, Inc. v. Clark,* 571 S.W.2d 816 (Tenn.1978).

■ The trial judge concluded that under the circumstances of this case, the plaintiff was justified in seeking medical treatment on his own after his discharge as a patient by Dr. Ricciardi, and that the medical expenses reported to the insurer were necessary and reasonable. We agree. It is apparent from the evidence that plaintiff acted in good faith in seeking medical treatment on his own. His action was a natural reaction to having been told by the physician chosen by the employer that he had nothing further to offer plaintiff in the way of medical treatment, and that he did not understand plaintiff's problem. Then too, the insurer knew that Dr. Ricciardi was no longer seeing plaintiff as a patient. It was put on notice by the receipt of the first medical bill for outside medical services (the one disallowed by the trial judge) that the plaintiff believed he needed additional medical treatment. With this knowledge, the insurer made no effort to remedy the original failure to comply with the statute by designating three physicians and giving the plaintiff the opportunity to choose one as his treating physician. Instead the insurer informed plaintiff that he had no choice but to return to Dr. Ricciardi for medical treatment if he expected the insur-

er to pay. Under these circumstances, it is our opinion the plaintiff was justified in seeking medical care of his own choosing and that the employer and his insurer is liable for payment of reasonable and necessary medical expenses. *See Burlington Industries, Inc. v. Clark,* 571 S.W.2d 816 (Tenn.1978), and cases there cited. We also are of the opinion that the evidence supports the trial judge's finding that the medical expenses detailed in the judgment were necessary and reasonable.

■ Defendant further takes issue with the judgment of the trial judge that defendant pay any future medical expense that may be incurred in necessary treatment of plaintiff's 1985 injury and resulting disability. Defendant insists there is no evidence to justify this order. We would note that a fair reading of the testimony of Dr. Burkhart indicates that there is a good possibility that Mr. Morgan will incur future medical expenses in treatment of the injury of August 28, 1985. We would also point out that defendant is protected against unreasonable and unnecessary future medical charges by the requirement that plaintiff must show a direct causal relationship between the need for medical treatment and plaintiff's on-the-job injury, and the further requirement that the defendant be given the opportunity to provide the treatment each time plaintiff reasonably requires additional treatment. *See generally, Greenlee v. Care Inn of Jefferson City,* 644 S.W.2d 679 (Tenn.1983).

The judgment of the trial court is affirmed, and the cause is remanded for enforcement of the judgment. Costs of the appeal will be paid by the defendant and its surety.

DROWOTA, C.J., and FONES, O'BRIEN and DAUGHTREY, JJ., concur.