

FILED

January 15, 2015

IN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 2:31 PM

## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE:** Sundance Young

**EMPLOYER:** LeAnn Gay, d/b/a Pleasant View Home Repair

**CARRIER:** Liberty Mutual Insurance

**DOCKET #:** 2014-06-0052
**STATE FILE #:** 81317-2014
**DATE OF INJURY:** September 26, 2014

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed on December 5, 2014, by Sundance Young (Mr. Young) against LeAnn Gay, d/b/a Pleasant View Home Repair (Pleasant View). Employee filed this Request for Expedited Hearing pursuant to Tennessee Code Annotated section 50-6-239(d) to determine if the provision of medical and temporary disability benefits is appropriate[1].

The undersigned Workers' Compensation Judge conducted an in-person Expedited Hearing on January 8, 2015. Landon Lackey represented Employee. Owen Lipscomb represented Employer and Carrier. After considering the arguments of Counsel, the applicable law, the technical record, and all testimony and evidence introduced at the Expedited Hearing, the Court hereby finds that Employee is entitled to the medical benefits requested, but that he is not entitled to temporary disability benefits at this time.

## ANALYSIS

### Issues

1) Whether Employee's injuries are the result of his alleged illegal drug use.

2) Whether Employee's injuries are the result of his willful failure or refusal to use a safety device.

3) Whether Employee is entitled to medical and temporary benefits.

---

1 Employee's Counsel indicated that Employee has unpaid medical bills relative to the claim, but that, should the claim be deemed compensable, he and Opposing Counsel will attempt to resolve issues regarding the bills between themselves. Therefore, the issue is not presently before the Court.

1

## Evidence Submitted

The Court admitted into evidence the exhibits below:

1. Medical Records of Sundance Young;
2. The Declaration of Sundance Young; and,
3. Transcription of Text Messages.

The Court designated the following as the technical record:

- Petition for Benefit Determination, October 28, 2014 ("PBD");
- Dispute Certification Notice, December 5, 2014; and,
- Employee's Request for Expedited Hearing, December 5, 2014.

The witnesses were:

- Sundance Young;
- William Steele Jr.;
- Terry Newman; and,
- LeAnn Gay.

## History of Claim

Mr. Young, the employee, is a 24-year-old resident of Cheatham County, Tennessee. He filed an October 28, 2014, Petition For Benefit Determination, which alleges he fell off a roof while working for Employer, LeAnn Gay, d/b/a Pleasant View Home Repair, on September 26, 2014, injuring his right ankle and foot. The mediator filed a Dispute Certification Notice on December 5, 2014, indicating that Employer denied the claim because Mr. Young's injury was the result of his intoxication through the use of illegal drugs and/or willful failure or refusal to use a safety device.

The parties agree that Employee sustained an injury by accident arising primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. § 50-6-102(13) (2014). The parties agree Mr. Young suffered a bimalleolar ankle fracture, requiring surgical repair and follow-up care with Tennessee Orthopaedic Associates. Ms. Gay did not file a First Report of Injury, a Notice of Denial, or wage statement nor has she paid disability benefits or medical benefits, other than three hundred dollars ($300.00) paid to Mr. Young.

## Factual Summary

Mr. Young testified that Mr. Newman, his supervisor, hired him approximately two weeks before the injury, for an hourly wage of $10 for 30-40 hours per week. On September 26, 2014, Employee arrived at Employer's place of business to receive the daily work assignment at approximately 6:00 a.m. He suffered injuries to his right foot and ankle when he fell from a one-story roof while repairing it. Specifically, at approximately 11:00 a.m., Mr. Young was gluing

2

down "TPO[2]" and moving backward when he tripped over a bucket and fell off the roof. Mr. Young testified that Mr. Newman did not see the fall, but immediately came to his aid, and drove him to the emergency room. According to Mr. Young, while en route to the emergency room, he told Mr. Newman he worried the fall would cost him his job. He testified Mr. Newman responded that it "would be OK," and Mr. Newman "would take care of everything." According to the medical records, Mr. Young arrived at Sumner Regional Medical Center at 11:35 a.m. He further testified that, at the hospital, Mr. Newman completed the paperwork and told staff Mr. Young fell off a truck. He testified he was in too much pain to speak. He denied using any drugs, legal or illegal, prior to the accident. He stated no one asked him to take a drug test. Mr. Young denied that he refused to take a drug test. He underwent surgery on the ankle. He continues to treat with Dr. S. Matthew Rose, who has not placed him at maximum medical improvement. He stated that approximately one week after surgery, Mr. Newman's son accompanied him to an appointment with Dr. Rose and gave him three hundred dollars ($300.00) toward the balance owed for past medical care. In subsequent text messages with Mr. Newman, he declined to pay for additional treatment. On rebuttal, Mr. Young testified no one instructed him to "harness-in" on the day of the accident, or at any time while he worked for Employer. He said he had never worn a safety harness in the two weeks leading up to the fall; nor were any other workers required to wear one. He said he was not aware of anyone being disciplined for not wearing a harness. He said there were no harnesses on the roof on the day of the accident.

Mr. Steele, a co-worker, testified that on the day of the accident, Mr. Young arrived at work sometime between 5:00 a.m. and 6:00 a.m. and that he saw Mr. Young smoking marijuana. Mr. Steele testified he drove to the worksite in a vehicle with Mr. Young and two or three other workers, who smoked more marijuana during the trip. Mr. Newman drove in another truck, according to Mr. Steele. At the jobsite, Mr. Steele was on the roof welding when he witnessed Employee's fall. He testified that: Employee was not harnessed prior to the fall; the harness was available; and the harness would have prevented the fall. Mr. Steele said another worker, "Sean," was wearing a harness at the time of the accident. Mr. Steele testified that wearing the harness "makes it hard," because it can get stuck in the materials (glue, tar). Mr. Steele said he was "chewed out" on one occasion for not wearing a harness on a jobsite in Chattanooga. He was not terminated or sent home for the infraction. Mr. Steele said he believed Mr. Young's fall was accidental and not intentional.

Mr. Newman is Ms. Gay's former spouse. He testified that, on the day of the accident, they left for the jobsite at approximately 7:00 a.m. Mr. Newman did not see Employee smoking marijuana before work on the day of the accident. He did not witness the accident. Mr. Newman testified the harness was available and would have prevented Employee's fall. He said he tells all workers about the rule and that he told Employee. He said when employees violate the rule, he terminates them; he gives no warnings and, "most times, it's on the spot." Mr. Newman said that, while driving Employee to the hospital, he told Employee he would be drug-tested because it is company policy after an accident. Employee responded he could not pass a drug test, and he would "take care of it himself." Mr. Newman said he had no knowledge that Employee had smoked marijuana. He said Employer's rule is no drugs and violators are terminated. According to Mr. Newman, upon their arrival, Employee told hospital staff "everything," while he said nothing. On cross-examination, Mr. Newman testified that

---

2 "Thermoplastic Polyolefin," a roofing material.

Employer drug-tests only after an accident. He stated he knew of no employees smoking marijuana. He testified that he drove to the worksite that day, the crew all arrived in one vehicle, and no one was smoking marijuana in the truck. Mr. Newman testified he wore a harness when on the roof at the jobsite on the day of the accident. He stated he "chewed out" Mr. Steele on a previous occasion for not wearing a harness, but he did not fire him because he was not near the edge. He stated he fired one or two workers for violating the rule over the past five years, but provided no specifics.

Ms. Gay, the owner of Pleasant View Home Repair, testified that Mr. Young's rate of pay is $10 per hour and he worked approximately 40 hours per week. She testified that after the accident, Employee told her he tripped over a bucket before he fell off the roof. She admitted that her business does not participate in the Tennessee Drug Free Workplace Program under Tennessee Code Annotated sections 50-9-101 - 114.

### Mr. Young's Contentions

Mr. Young contends he fractured his ankle at work and the injury is compensable. Employer's witnesses gave inconsistent testimony. He denies illegal drug use or that he said anything to Mr. Newman or hospital staff after the injury to avoid a drug test. Employer produced no medical proof that Mr. Young used illegal drugs, and judicial notice of the effects of marijuana is not appropriate due to the complexity of the subject. Employer did not enforce the workplace safety rule requiring the necessity of wearing a harness. Mr. Young never witnessed anyone being disciplined for noncompliance, and he was never disciplined in any way. Employer has not met its burden regarding either defense.

Employee asserts he is entitled to medical benefits for all future medical care. He further asserts he is entitled to past and ongoing disability benefits.

### Pleasant View's Contentions

The conflicts among Pleasant View's witnesses' testimony merely reflect their different recollections and perspectives. Employer raises two affirmative defenses: Employee's injury resulted from illegal drug use; and/or his willful failure or refusal to use a safety device (the harness). With regard to the first defense, while there is no medical proof that Employee had marijuana in his system, the Court should take judicial notice of the effects of marijuana upon a user's coordination, judgment and awareness of his or her surroundings. With regard to the second defense: Employee was aware of the rule regarding the harness requirement; Employer enforced the rule; and Employee chose not to comply, causing his injury. Therefore, Employee's injury is not compensable.

### Findings of Fact and Conclusions of Law

*Standard Applied*

When determining whether to award benefits, a workers' compensation judge must decide whether, based on the evidence introduced at the Expedited Hearing, the moving party is

likely to succeed on the merits at the Compensation Hearing. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003). In a workers' compensation action, the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2014). No compensation shall be allowed for an injury or death due to the employee's illegal drug usage or the employee's willful failure or refusal to use a safety device. Tenn. Code Ann. § 50-6-110(a) (3) and (4) (2014). If the employer relies upon such defenses, the burden of proof shall be on the employer to establish the defense. Tenn. Code Ann. § 50-6-110(b) (2014).

## Factual Findings

Mr. Young sustained a left-ankle fracture when he fell from a roof at work on September 26, 2014. Pleasant View has not demonstrated that Mr. Young's intoxication or illegal drug use caused the accident. Pleasant View has not demonstrated that Mr. Young's willful failure or refusal to use a safety device caused the accident. Pleasant View has not demonstrated that it gave Employee adequate notice of a safety rule requiring him to wear a harness, or that it disciplined Employee or any other employees for violating a rule requiring the use of a safety harness. Employer paid Mr. Young $10 per hour for an average of 40 hours per week. Mr. Young's injury required surgery. Pleasant View paid $300 toward Mr. Young's past medical care, but refused to pay for any other treatment for the injury. Mr. Young has not returned to work for Pleasant View or anyone else since the date of injury. The medical records do not contain any formal work restrictions.

## Application of Law to Facts

### 1. Employer has not satisfied its burden to deny Employee's claim based on his intoxication or illegal drug usage.

Ms. Gay admitted that Pleasant View is not a Drug Free Workplace under Tennessee Code Annotated sections 50-9-101 – 114. As previously stated, the statute places the burden of proof of an affirmative defense upon the employer. Construing the phrase "due to intoxication," and presumably the companion phrase "due to illegal drugs," the Tennessee Workers' Compensation Panel has concluded that "the intoxication need not be the 'sole cause' of the accident, *but it must be a 'proximate cause'* and *not 'merely a remote or contributing cause.'*" (Emphasis added.) *Alford v. Bruce Hardwood Floors*, 1999 Tenn. LEXIS 283 (Tenn. Workers' Comp. Panel, May 28, 1999).

Mr. Young denied using marijuana on the morning of the accident. Mr. Steele testified he observed Employee using marijuana twice on the morning of the accident – before departing the work assembly area, and in the truck on the way to the jobsite. Mr. Newman, however, testified that he knew of no one using marijuana before the crew departed, and he drove the truck to the jobsite. Mr. Newman testified that no one used marijuana during that drive. Contrary to Employer's Counsel's characterization, these are not merely "different recollections or perspectives," but rather are central facts relative to this particular defense. Importantly, no witness testified concerning the effects of marijuana on Mr. Young, and no witness contended that his fall resulted from the alleged marijuana use. In fact, consistent with Mr. Young's

5

version of how he fell, Ms. Gay testified Employee told her he fell after tripping over a bucket. Mr. Steele also characterized the fall as an accident.

Employer's Counsel invited the Court to take judicial knowledge of the effects of marijuana. The Court declines to do so. Judicial notice is defined as an acceptance by a court, "for purposes of convenience and without requiring... proof, of a well-known and indisputable fact." *State v. Lawson*, 291 S.W.3d 864, 868 (Tenn. 2009), citing Black's Law Dictionary 863-64 (8th ed. 2004). Resort to judicial notice is subject to limitations, as indicated by Rule 201 of the Tennessee Rules of Evidence, which provides in relevant part, "A judicially noticed fact must be one not subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Id.* at 869. This Court concludes that the effects of marijuana are subject to reasonable dispute, in that they are not generally known within the territorial jurisdiction of this Court, and they are not capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Pleasant View has not sustained its burden. The intoxication or illegal drug usage defense is without merit.

### 2. *Employer has not satisfied its burden to deny Employee's claim based on the willful failure or refusal to use a safety device.*

The controlling case outlining the willful misconduct affirmative defense is *Mitchell v. Fayetteville Public Utilities*, 368 S.W.3d 442 (Tenn. 2012). The previous statutory preference for an equitable construction and a remedial application played no role in that case's outcome. Therefore, this Court is bound by its principles. *See Goodman v. HBD Indus.*, 208 S.W.3d 373 (Tenn. 2006). In order to successfully defend a workers' compensation claim on the basis of willful misconduct, willful disobedience of safety rules, or willful failure to use a safety device under Tennessee Code Annotated section 50-6-110(a), the *Mitchell* Court adopted a four-step test: (1) the employee's actual, as opposed to constructive, notice of the rule; (2) the employee's understanding of the danger involved in violating the rule; (3) the employer's bona fide enforcement of the rule; and, (4) the employee's lack of a valid excuse for violating the rule. *Mitchell*, 368 S.W. at 453.

Employer's affirmative defense fails because the evidence does not compel a finding that Pleasant View gave adequate notice of the safety rule. Mr. Newman testified that he tells all employees about the rule and he told Mr. Young. Employee testified that no one advised him to wear a harness at any point. The Court finds Mr. Young's testimony credible on this point. Further, Employer did not introduce any documentary evidence, such as training materials or an employee handbook, to support its contention that the rule is adequately conveyed to all employees.

Employer's affirmative defense additionally fails because the evidence does not preponderate in its favor with regard to Employer's bona fide enforcement of the safety rule. Employee testified that no one had harnessed-in during the approximately two weeks leading up to the accident. He testified he was not instructed to wear the harness on the day of the accident; he was not disciplined for failure to do so; and no one else had been disciplined for failure to use

6

a harness at any time. The Court finds this testimony credible. Moreover, Mr. Newman testified that the consequence for failure to harness-in is "on the spot" termination, but he admitted he had not fired Mr. Steele when he violated the rule. Mr. Newman testified he fired one or two other persons for violating the rule, but did not provide specific information. The Court finds that Mr. Newman did not strictly enforce the harness-in rule.

### 3. *Employee is entitled to medical benefits but is not eligible for temporary disability benefits at this time.*

Tennessee Code Annotated section 50-6-204(a)(1)(A) (2014) provides that employers must provide to injured employees such medical care and treatment "made reasonably necessary by accident as defined in this chapter." The statute further requires the employee to accept medical benefits furnished by the employer, provided, that:

> [I]in any case when the employee has suffered an injury and expressed a need for medical care, the employer shall designate a group of three (3) or more reputable physicians, surgeons, chiropractors or specialty practice groups if available in that community… from which the injured employee shall select one (1) to be the treating physician.

Tenn. Code Ann. § 50-6-204(3)(A) (2014). The Tennessee Supreme Court has held that where the employer fails to give the employee the opportunity to choose the ultimate treating physician from a panel of at least three physicians, he runs the risk of having to pay the reasonable cost for treatment of the employee's injuries by a physician of the employee's choice. *United States Fidelity & Guaranty Co. v. Morgan*, 795 S.W.2d 653, 655 (Tenn. 1990). The decision turns on the issue of whether, under the circumstances, the employee was justified in obtaining further medical services, without first consulting the employer or its insurer. *Id.*, citing *Burlington Industries, Inc. v. Clark*, 571 S.W.2d 816 (1978).

Pleasant View did not comply with this provision because it did not offer Mr. Young a panel of physicians. Pleasant View knew that Mr. Young was receiving post-surgical care because Employer paid $300 toward Mr. Young's medical bills, but afterward refused to pay any additional sums. Employer has denied the claim and did not provide any medical benefits because it asserted two affirmative defenses, both of which this Court has found meritless. Under the circumstances, Employee's decision to continue to treat with Dr. Rose was reasonable. Thus, this Court orders Employer and/or its workers' compensation carrier to pay for all continuing reasonable and necessary treatment with Dr. Rose as the authorized treating physician.

Temporary total disability benefits, authorized by Tennessee Code Annotated section 50-6-207(1), ensure that employees receive compensation during the time they are totally prevented from working while recuperating as far as the nature of their injury permits. *Gluck Bros., Inc. v. Coffey*, 431 S.W.2d 756, 759 (Tenn. 1968). In other words, "the temporary total disability period is the healing period during which the employee is totally prevented from working." *Id.* In order to establish a *prima facie* case for temporary total disability benefits, the worker must show that

(1) he or she was totally disabled and unable to work due to a compensable injury, (2) the work injury and inability to work are causally connected, and (3) the duration of the disability. *Gray v. Cullom Machine, Tool & Die, Inc.*, 152 S.W.3d 439, 443 (Tenn. 2004).

After thorough and careful review of the medical records, the Court finds no suggestion from Dr. Rose that Mr. Young has been or remains unable to work. Employee testified he has not worked since the accident and Dr. Rose has not released him to return to work. It is certainly plausible that one suffering from the type of injury Mr. Young sustained would be unable to work before and immediately after the surgery. However, this Court cannot rely entirely upon Mr. Young's lay opinion and his hearsay reporting of Dr. Rose's expert opinion regarding his restrictions as the basis for ordering temporary disability benefits. It appears likely that Employee is not at maximum medical improvement. At this time, Employee has not met his burden and accordingly the Court cannot order past or ongoing temporary disability benefits. Should Employee obtain the appropriate expert evidence, which contains the requisite specificity regarding the severity and duration of disability, he may file an amended PBD requesting temporary benefits as the statute allows or resolve the issue directly with Employer's Counsel.

**IT IS, THEREFORE, ORDERED** as follows:

1. Pleasant View Home Repair or its workers' compensation carrier shall provide Mr. Young with additional medical treatment for the injury as required by Tennessee Code Annotated section 50-6-204. Dr. S. Matthew Rose is designated as the authorized treatment provider. Pleasant View Home Repair or its workers' compensation carrier shall pay for all reasonable and necessary treatment with Dr. Rose as required by that statute. Medical bills shall be furnished to Pleasant View Home Repair or its workers' compensation carrier by Mr. Young or medical providers.

2. Mr. Young's claim against Pleasant View Home Repair or its workers' compensation carrier for the requested temporary disability benefits is denied on grounds other than compensability at this time.

3. This claim is set for Initial Hearing at **9:30 A.M.** on **March 17, 2015.**

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED** this the 15 day of January, 2015.

Chief Judge Kenneth M. Switzer
Tennessee Court of Workers'
Compensation Claims

Initial Hearing:

An Initial Hearing has been set with **Chief Judge Kenneth M. Switzer, Court of Workers Compensation. You must dial in at 615-532-9552 or 866-943-0025 toll free at to participate in your scheduled conference.**

Please Note: <u>You must call in on the scheduled date/time to participate.</u> **Failure to call in may result in a determination of the issues without your further participation.** All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the

9

appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the *15th* day of January, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Landon Lackey, Employee's attorney | | | | | | Landon@landonlackeylaw.com |
| Owen Lipscomb, Employer's attorney | | | | | | Owen.Lipscomb@LibertyMutual.com |

Penny Shrum
Clerk, Court of Workers' Compensation Claims

10