FILED

April 6, 2016

IN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 8:52 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | | |
|---|---|---|
| Rubiel Ramos | ) | Docket No.: 2015-02-0223 |
|    Employee, | ) | |
| v. | ) | State File Number: 53310-2015 |
| Eleazar Orona | ) | |
|    Non-Insured Employer. | ) | Judge Brian K. Addington |

---

## EXPEDITED HEARING ORDER FOR
## MEDICAL AND TEMPORARY DISABILITY BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on March 22, 2016, on the Request for Expedited Hearing filed by Rubiel Ramos pursuant to Tennessee Code Annotated section 50-6-239 (2015).[1] The present focus of the case is Mr. Ramos' employment status at the time of the subject work accident. The central legal issue is whether Mr. Ramos was an employee of Eleazar Orona at the time of his May 25, 2015 injury.[2] For the reasons set forth below, the Court finds Mr. Ramos was an employee of Mr. Orona at the time of his injury and thus is entitled to medical and temporary disability benefits under the Workers' Compensation Law.

### History of Claim

Rubiel Ramos is a twenty-one-year-old resident of Washington County, Tennessee. (T.R. 1 at 1.) He is a laborer who performs construction work. (Ex. 1.) While Mr. Ramos worked at a construction site, Eleazar Orona approached him and his brother and asked if they would like to work on Mr. Orona's home construction project. *Id.* The parties agreed Mr. Orona would pay each worker, including Mr. Ramos, $170.00 per day. *Id.*

According to Mr. Orona's testimony, he is self-employed in the construction business. Mr. Orona contacted a man named Mr. Nunez to see if he could perform

---

[1] Mr. Ramos and Mr. Orona are fluent in Spanish only. The Court used the services of an interpreter, who was sworn and who translated the testimony of Mr. Ramos and Mr. Orona, as well as the Court's statements.

[2] Additional information regarding the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an Appendix.

1

construction work on a home-building project. Mr. Nunez appeared on the site with two other workers whom Mr. Orona had not met before, one of whom was Mr. Ramos. When the workers completed the project, Mr. Orona asked the men if they wanted to work on another project. They agreed. According to Mr. Orona, he told Mr. Ramos that, while he was unsure of how Mr. Ramos' boss, Mr. Nunez, paid him, he would pay by the hour.

On May 25, 2015, Mr. Ramos worked the entire day at Mr. Orona's construction project. *Id.* While cleaning the roof of the home, Mr. Ramos sat down to take a break. *Id.* When he attempted to get up, his leg became caught on a nail, causing him to fall approximately six feet to the ground. *Id.* Mr. Ramos' brother took him to Johnson City Medical Center (JCMC), where x-rays revealed a right arm fracture. *Id.* While the parties provided no medical records of Mr. Ramos' treatment at JCMC, medical billing statements show that he received extensive diagnostic testing, including a brain MRI, multiple x-rays of the arm, chest, spine, and shoulder, and CT scans of the head and cervical spine. (Ex. 7.) Mr. Ramos remained in the hospital overnight and was released the next day. *Id.*

According to both parties' testimony, Mr. Orona was not present at the construction site at the time of Mr. Ramos' accident. When Mr. Nunez informed Mr. Orona of the accident, Mr. Orona went to JCMC to see Mr. Ramos. Mr. Orona acknowledged that he did not have workers' compensation insurance coverage at the time of the accident. However, Mr. Orona testified that, while he did not consider Mr. Ramos to be his employee, he wanted to help him financially. The two agreed Mr. Orona would pay Mr. Ramos $400.00 per week. The parties supplied receipts evidencing Mr. Orona's weekly payments, totaling $1,900.00. (Ex. 8.)

Mr. Ramos acknowledged that he received Mr. Orona's separate $170.00 payment for the work he performed on the date of the accident. Mr. Orona testified that he paid Mr. Nunez, who was to disperse payment to Mr. Ramos.

Mr. Ramos next treated with Watauga Orthopedics for his right arm fracture. On June 8, 2015, he saw nurse practitioner Everett Baker, who noted, "Patient fell off a roof 5/25/15. He was seen at JCMC same day for x-rays. He did not bring those with him today. He is in a splint and sling. He reports to have a fracture around the elbow." (Ex. 2 at 1.) X-rays taken that day confirmed a closed "non-displaced radial head fracture." (Ex. 2 at 2.) Nurse Baker recommended a sling and "passive [range of motion exercises] only, no use of right arm for lifting, pushing, pulling, or twisting. [F]ollow up in 4 weeks." (Ex. 2 at 3.) Dr. Gregory Stewart at Watauga referred Mr. Ramos to physical therapy. (Ex. 2 at 4.) Both Dr. Stewart and nurse Baker signed the provided medical records. Mr. Ramos testified that he has had no further medical treatment for his work injury since his initial visit at Watauga.

2

Mr. Ramos incurred substantial medical bills associated with this treatment. (*See* Exs. 4, 5, 6, and 7.) According to Mr. Orona, when Mr. Ramos raised the issue of medical bills with him, Mr. Orona advised him to complete paperwork that would help reduce the total owed. The paperwork required a signature by Mr. Ramos' employer, and Mr. Orona refused to sign it, claiming he did not employ Mr. Ramos. Mr. Orona then stopped his weekly payments to Mr. Ramos, asserting he was not Mr. Ramos' employer at the time of the accident.

Mr. Ramos testified he was unable to work for approximately three months as a result of his right arm injury. He resumed working on different construction projects on August 28, 2015. Mr. Ramos has not worked for Mr. Orona since the date of injury.

### *Mr. Ramos' assertions at the Expedited Hearing*

Mr. Ramos contends he was Mr. Orona's employee at the time of the subject work accident. He requests Mr. Orona pay all of the medical bills incurred as a result of treatment for his injury, as well as for any treatment he may require in the future for his right arm. Mr. Ramos also requests payment for lost wages resulting from the injury.

### *Mr. Orona's assertions at the Expedited Hearing*

Mr. Orona asserts that Mr. Ramos was not his employee at the time of the injury. He contends Mr. Ramos worked for Mr. Nunez, who brought him to the job site. Mr. Orona argues that because he did not employ Mr. Ramos, he is not responsible for any workers' compensation benefits associated with the May 25, 2015 accident.

### Findings of Facts and Conclusions of Law

In this workers' compensation case, Mr. Ramos has the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). However, Mr. Ramos need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an Expedited Hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which the trial court can determine that he is likely to prevail at a hearing on the merits. *Id.*

The legislature has expressly defined the phrase "arises primarily out of and in the course and scope of employment" to mean that an injury is compensable "*only* if it has been shown by a preponderance of the *evidence* that the *employment* contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B) (2015) (emphasis added).

The legislature has defined an "employee" to mean "every person . . . in the service of an employer . . . *under any contract of hire or apprenticeship, written or implied.*" Tenn. Code Ann. § 50-6-102(12)(A) (2015) (emphasis added.) Tennessee Code Annotated section 50-6-102(13) (2015) defines an "employer" as including "any individual . . . using the services of not less than five (5) persons for pay, except as provided in § 50-6-902," which addresses construction services providers.

Tennessee Code Annotated section 50-6-902(a) (2015) states that "*all* construction services providers shall be *required* to carry workers' compensation insurance on themselves. The requirement set out in this subsection (a) shall apply *whether or not the provider employees fewer than five (5) employees.*" (Emphasis added.) Subsection (d) of the same statute states, "Nothing in this part shall be construed as exempting or preventing a construction services provider from carrying workers' compensation insurance *for any of its employees.* The requirement set out in this subsection (d) shall apply *whether or not the provider employs fewer than five (5) employees.*" (Emphasis added.)

The Workers' Compensation Appeals Board recently held, "If only 'employees' as defined in the workers' compensation law are eligible for workers' compensation benefits, then the critical issue . . . is whether the claimant was an 'employee' at the time of the injury." *Duck v. Cox Oil Co.*, No. 2015-07-0089, 2015 TN Wrk. Comp. App. Bd. LEXIS 2, at *14 (Tenn. Workers' Comp. App. Bd. Jan. 21, 2016).

The Court finds the evidence preponderates in favor of the conclusion that Mr. Orona was Mr. Ramos' employer on the date of injury. Mr. Orona used Mr. Ramos' services for pay. He invited Mr. Ramos to work on one of his construction projects and agreed to pay him $170.00 for the day he worked. He personally paid Mr. Ramos for the work he performed on the day in question.

As a provider of construction services, Mr. Orona was required by law to carry workers' compensation insurance coverage on both himself, unless he applied for and received an exemption pursuant to Tennessee Code Annotated section 50-6-902(b) (2015), and anyone whose services he used for pay. However, Mr. Orona did not have workers' compensation coverage on the date of injury in violation of his statutory obligations.

The Court finds Mr. Ramos has come forward with sufficient evidence from which the Court can determine that he is likely to prevail at a hearing on the merits. Consequently, the Court further finds Mr. Orona liable to Mr. Ramos for workers' compensation benefits.

As to the issue of temporary disability benefits, the evidence establishes Mr.

4

Ramos' pre-injury wages were $170.00 per week. The Court therefore finds Mr. Ramos' compensation rate to be the state's minimum applicable to the date of injury, $127.50.

Mr. Ramos is eligible for temporary partial disability benefits pursuant to Tennessee Code Annotated section 50-6-207(2)(B) (2015), because Dr. Stewart did not take Mr. Ramos off work but only limited his work.

According to Mr. Ramos, he did not work for Mr. Orona or another employer from the date of injury to August 27, 2015, due to his injury. At most, therefore, Mr. Ramos would be entitled to thirteen weeks and four days of temporary disability benefits, or $1,730.35. The Court finds Mr. Orona directly paid Mr. Ramos $1,900.00, according to the presented receipts. Consequently, no temporary disability benefits are owed.

Concerning medical benefits, Mr. Ramos' treatment was unauthorized, as a result of Mr. Orona's failure to provide a panel of physicians, as required by Tennessee Code Annotated section 50-6-204 (2015). The Workers' Compensation Law requires that before holding an employer responsible for unauthorized medical expenses, an assessment must be made as to whether, under the circumstances, the injured worker acted reasonably in seeking unauthorized care. *U.S. Fid. & Guar. Co. v. Morgan*, 795 S.W.2d 653, 655 (Tenn. 1990). The conclusion depends on the circumstances of each case. *Dorris v. INA Ins. Co.*, 764 S.W. 2d 538, 541 (Tenn. 1989). The Court finds Mr. Ramos acted reasonably when he sought treatment for his broken arm at JCMC and at Watauga Orthopedics. Consequently, Mr. Orona is responsible for Mr. Ramos' medical bills incurred at both facilities.

In addition, Mr. Orona must provide continued medical treatment for Mr. Ramos' injured right arm. The medical proof established that Watauga orthopedist, Dr. Gregory Stewart, ordered physical therapy for Mr. Ramos' injury. Because Mr. Orona failed to provide Mr. Ramos a panel of physicians, Dr. Stewart is deemed Mr. Ramos' authorized treating physician. Mr. Ramos is entitled to reasonable and necessary medical treatment for his right arm injury, as directed by Dr. Stewart. Mr. Orona must pay for any such treatment.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Orona owes no additional temporary partial disability benefits at this time.

2. Mr. Orona is responsible for medical expenses incurred by Mr. Ramos as a result of the work injury, including treatment Mr. Ramos received at JCMC and Watauga Orthopedics.

3. Dr. Gregory Stewart is deemed Mr. Ramos' authorized treating physician for the May 25, 2015 work injury. Mr. Ramos is entitled to return to Dr. Stewart for

5

additional medical care made reasonable and necessary as a result of the subject work accident. Mr. Orona is liable for all the costs of Dr. Stewart's treatment for Mr. Ramos' work injury.

4. This matter is set for an Initial (Scheduling) Hearing on April 22, 2016, at 2:30 p.m. Eastern.

**ENTERED this the 6th day of April, 2016.**

**Judge Brian K. Addington**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set with **Judge Brian K. Addington, Court of Workers' Compensation Claims, on April 22, 2016 at 2:30 p.m. You must call 855-543-5044 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or

6

other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:
1. Affidavit of Rubiel Ramos;
2. Medical records from Watauga Orthopedics;
3. Discharge Medication Instructions, Mountain States Health Alliance;
4. Billing statement, Johnson City Medical Center;
5. Billing statement, Watauga Pathology Associates;
6. Billing statement, Watauga Orthopedics;
7. Billing statement, Mountain Empire Radiology;
8. Receipts, Mr. Orona's cash payments to Mr. Ramos; and,
9. FOR IDENTIFICATION PURPOSES ONLY: $950 loan taken out by Mr. Ramos.

Technical record:[3]
1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Request for Expedited Hearing; and,
4. Order Resetting an Expedited Hearing.

---

[3] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on April 6, 2016.

| Name | Certified Mail | First Class Mail | Via Email | Service Sent To: |
|------|----------------|------------------|-----------|------------------|
| Rubiel Ramos | X | | | 2805 W. Walnut Street, Apt. 15 Johnson City, TN 37604 |
| Eleazar Orona | X | | | 2701 S. Roan Street, Lot 113 Johnson City, TN 37601 |

Penny Shrum, Clerk of the Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

9