**FILED**

**May 25, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 12:55 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | |
|---|---|
| Ronnie Tolbert | ) Docket No.: 2015-02-0401 |
|      Employee, | ) |
| v. | ) State File Number: 3253-2016 |
| Synalloy Corporation d/b/a | ) |
| Bristol Metals | ) |
|      Employer, | ) Judge Brian K. Addington |
| And | ) |
| Great American Alliance Ins. Co. | ) |
|      Insurance Carrier. | ) |
| | ) |

## ORDER DENYING REQUESTED MEDICAL BENEFITS

This matter came before the undersigned Workers' Compensation Judge on May 18, 2016, on the Request for Expedited Hearing filed by the employee, Ronnie Tolbert, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether Bristol Metals is responsible for Mr. Tolbert's emergency room treatment on the date of injury. The central legal issue is whether Mr. Tolbert acted reasonably when he sought unauthorized emergency treatment despite Bristol Metals presenting him with a panel of physicians.[1] For the reasons set forth below, the Court finds Mr. Tolbert did not reasonably seek the disputed emergency room treatment and that Bristol Metals is not responsible for the cost of that treatment.

### History of Claim

Mr. Tolbert is a fifty-seven-year-old resident of Washington County, Virginia. (T.R. 1 at 1.) He works as a welder for Bristol Metals in Bristol, Tennessee. *Id.* Mr. Tolbert testified he injured his low back on March 30, 2015, when he raised from a bending position after unstrapping a pipe. His back popped, causing him to go to the floor. He acknowledged during the hearing that he had two prior low back injuries while

---

[1] Additional information regarding the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an Appendix.

1

working for Bristol Metals, one in 2007, and another in 2011.

According to Mr. Tolbert, he injured his back at approximately 7:00 a.m. He testified that he contacted his supervisor, Chris Fletcher, to inform him of his injury. Because no other medical facility was open that early in the morning, Mr. Tolbert asked that he be allowed to treat at the Bristol Regional Medical Center emergency room. (Ex. 1 at 1.) Mr. Tolbert testified that his significant pain prompted his desire to be seen at the emergency room, as opposed to a clinic.

According to Mr. Tolbert, Mr. Fletcher instructed him to wait until the Environmental Health and Safety Coordinator, Rusty Pippin, arrived at work before seeking treatment. Mr. Tolbert met with Mr. Pippin later that morning. According to Mr. Tolbert, Mr. Pippin wanted him to treat at an occupational medicine clinic. Mr. Tolbert instead elected to treat at the emergency room.

Mr. Pippin testified at the hearing. He asserted Mr. Tolbert reported the injury to him at approximately 10:30 on the morning of the accident. Mr. Pippin added that he does not arrive at work until 8:00 a.m., so Mr. Tolbert could not have reported the injury to him and requested treatment at 7:00 a.m.

Mr. Pippin also testified he presented a physician panel to Mr. Tolbert. (Ex. 4.) Instead of choosing one of the listed physicians, however, Mr. Tolbert insisted on going to the emergency room. Mr. Tolbert testified that, while he signed the C-42, he did not understand it to be a physician panel. According to Mr. Tolbert, Mr. Pippin advised him that the document was a "release" that he had to sign in order to go to the emergency room. When questioned about the handwritten entry, "Emerg. Room" on the C-42's "Physician chosen" section, Mr. Tolbert testified it was not his writing. Mr. Pippin acknowledged that he, and not Mr. Tolbert, wrote "Emerg. Room" on the C-42. He did so not as an indication of a valid panel selection, but simply to record Mr. Tolbert's intent to go the emergency room, which was not authorized. Mr. Pippin explained to Mr. Tolbert that he could choose to see any of the physicians listed on the panel, but Mr. Tolbert elected to be seen at the emergency room. Mr. Pippin did not recall why Mr. Tolbert was adamant about being seen at the emergency room.

Mr. Tolbert acknowledged on cross-examination that he received the C-42 at about 9:30 or 10:00 that morning and that an occupational health clinic would have been open at that time.

Mr. Pippin testified that he called Mr. Fletcher at approximately 10:00 that morning to inform him of Mr. Tolbert's injury and that Mr. Fletcher did not know anything about the injury before the call.

During his testimony, Mr. Fletcher confirmed Mr. Pippin's account, adding that he

2

did not recall Mr. Tolbert calling him to report an injury. Mr. Fletcher also testified that, after his conversation with Mr. Pippin, he prepared an Incident Report. (Ex. 5.) The Incident Report Indicates the "Incident Time" as 10:30 a.m. and the "Reported Time" as 7:10 a.m. *Id.* Mr. Fletcher acknowledged that the time entries are incorrect and were entered "backwards." He added that he prepared the document based on what Mr. Tolbert told him.

Bristol Metals' Human Resources Manager, Lee Ellis, testified at the hearing. He acknowledged completing the Form C-20 First Report of Work Injury using the insurance carrier's online service. (Ex. 6.) He confirmed he recorded the "Time of Injury" as 10:30 a.m. on the C-20. Mr. Ellis also testified that Mr. Tolbert did not report the injury to him.

Ultimately, Mr. Tolbert presented to the emergency room, not one of the facilities listed on the C-42. The corresponding medical record indicates Mr. Tolbert arrived at 11:15 a.m. A lumbar CT was taken, and the results were compared to Mr. Tolbert's lumbar MRI from November 2014. The reviewing medical provider determined the CT findings to be "unaltered" from the earlier MRI. Mr. Tolbert was diagnosed with a lumbar strain and was prescribed pain medicine and a muscle relaxer. He was discharged home shortly after 2:00 p.m.

After approximately two weeks off work, Mr. Tolbert returned to his employment with Bristol Metals, where he remains on duty.[2]

Mr. Tolbert filed a Petition for Benefit Determination seeking additional medical and temporary disability benefits on October 27, 2015. (T.R. 1 at 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. (T.R. 2.) After a Show Cause Hearing and Order dated March 2, 2016, Mr. Tolbert filed a Request for Expedited Hearing on March 9, 2016. (T.R. 5 and T.R. 4, respectively.) This Court heard the matter on May 18, 2016.

At the Expedited Hearing, Mr. Tolbert asserted he contacted Mr. Fletcher immediately after the injury occurred at approximately 7:00 a.m. However, Mr. Fletcher advised him to wait until Mr. Pippin arrived before seeking treatment. Given the early time of day the incident occurred and the extent of his back pain, Mr. Tolbert communicated his desire to be seen at the emergency room. According to Mr. Tolbert, Mr. Pippin wanted him to go to at an occupational medicine clinic. Mr. Tolbert acknowledged he signed the C-42 Mr. Pippin provided, but he understood from Mr. Pippin his signature was required as a "release" in order to be seen at the emergency room. He made no panel selection. Regardless of the signed C-42, Mr. Tolbert requested Bristol Metals be held responsible for his treatment at the emergency room on March 30,

---

[2] Mr. Tolbert advised the Court he does not seek temporary disability benefits, only payment of the emergency room bill arising from his March 30, 2016 treatment.

3

2016.

Bristol Metals argued Mr. Tolbert ignored the C-42 physician options it gave him and instead presented to the emergency room on his own. It asserted the emergency room visit was unauthorized and is, therefore, not its responsibility under the Workers' Compensation Law in light of its panel offer. Bristol Metals also argued that Mr. Tolbert did not report his accident until approximately 10:00 a.m., when all available treatment facilities would have been open for business. It contended the emergency room was not Mr. Tolbert's only option for medical care, and his choice to treat there was purely his own.

### Findings of Facts and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). As the injured worker seeking benefits, Mr. Tolbert has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987); *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

Mr. Tolbert need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). However, at an expedited hearing, he has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

The Workers' Compensation Law requires that before holding an employer responsible for unauthorized medical expenses, an assessment must be made as to whether, under the circumstances, the injured worker acted *reasonably* in seeking unauthorized care. *U. S. Fid. & Guar. Co. v. Morgan,* 795 S.W.2d 653, 655 (Tenn. 1990)(emphasis added).

The initial question is whether Bristol Metals authorized Mr. Tolbert's emergency room visit. Mr. Tolbert claims Mr. Pippin presented the C-42 to him as a "release" he was required to sign before going to the emergency room. He acknowledges signing the document. Mr. Pippin explained that he presented the panel in order for Mr. Tolbert to select one of the listed facilities. He only wrote "Emerg. Room" in the "Physician Chosen" section to record Mr. Tolbert's intent to be seen there. Mr. Tolbert testified that Bristol Metals "wanted me to go to the occupational medicine clinic." The weight of the provided testimony and evidence favors Bristol Metals' argument. The Court finds the

4

March 30, 2016 emergency room visit unauthorized.

The next question is whether Mr. Tolbert acted reasonably when he sought unauthorized treatment at the emergency room. The Court finds he did not. Regardless of when the accident actually occurred, Mr. Tolbert did not leave the premises to be examined until after 10:00 a.m. —when the medical facilities listed on the panel were open for business. No information to the contrary was offered. The Court does not accept Mr. Tolbert's argument that the emergency room was his only option, given the hour. The Court also does not accept Mr. Tolbert's assertion that the nature of his condition required emergency care. There is nothing inherently emergent about a back strain, and Mr. Tolbert offered no proof of any extenuating circumstances that would require immediate care.

The Court finds Mr. Pippin provided Mr. Tolbert an appropriate physician panel "of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty practice groups . . . from which the injured employee shall select one (1) to be the treating physician." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (2015). Mr. Tolbert ignored the panel and proceeded to the emergency room at his peril. The Court finds his actions unreasonable.

The Court finds Mr. Tolbert failed to come forward with sufficient evidence from which the Court could conclude he is likely to prevail in his present request at a hearing on the merits. His request that Bristol Metals pay for the contested emergency room treatment he received on March 30, 2016, is denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Tolbert's claim against Bristol Metals and its workers' compensation carrier for the requested medical benefits is denied.

2. This matter is set for Initial (Scheduling) Hearing on July 13, 2016, at 3:30 p.m. Eastern.

**ENTERED this the 25th day of May, 2016.**

**Judge Brian K. Addington**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set with **Judge Brian K. Addington, Court of**

5

**Workers' Compensation Claims. You must call toll-free at 855-543-5044 to participate in the Initial Hearing.**

**Please Note:** **You must call in on the scheduled date/time to participate.** **Failure to call in may result in a determination of the issues without your further participation.** **All conferences are set using Eastern Time (ET).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation

6

Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6.  If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:

1. (Collective) Affidavits of Ronnie Tolbert, November 4, 2015;
2. (Collective) Medical records of Bristol Regional Medical Center emergency room;
3. Medical record of Dr. Morgan Lorio, April 2, 2015;
4. C-42 physician panel;
5. Brismet Incident Report (For Identification Only);[3]
6. First Report of Work Injury;
7. Medical bills (For Identification Only).[4]

Technical record:[5]

1. Petition for Benefit Determination, October 27, 2015;
2. Dispute Certification Notice, filed November 16, 2015;
3. Amendments to Dispute Certification Notice, November 10, 2015;
4. Request for Expedited Hearing, March 9, 2016;
5. Order on Show Cause Hearing, March 2, 2016.

---

[3] Bristol Metals did not provide this document prior to the hearing. The Court declines to consider it.

[4] Although Mr. Tolbert provided these documents to the Court prior to the hearing, he did not lay a proper foundation for their admittance. The Court declines to consider them.

[5] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 25th day of May, 2016.

| Name | Certified Mail | Via Email | Service Sent To: |
|------|----------------|-----------|------------------|
| Ronnie Tolbert | X | X | 933 Lewis Street<br>Bristol, VA 24201<br>islandcynthia@gmail.com |
| Conner Sestak, Esq. | | X | csestak@morganakins.com |

Penny Shrum, Clerk of Court
WC.CourtClerk@tn.gov

9