FILED

September 27, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 10:50 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT KINGSPORT

| | |
|---|---|
| Lelia Jones,<br>　　　　　Employee,<br>v.<br><br>Amedysis Corporation,<br>　　　　　Employer,<br>And<br><br>The Hartford Insurance Company,<br>　　　　Insurance Carrier. | Docket No.: 2015-02-0420<br><br><br>State File Number: 87323-2015<br><br>Judge Brian K. Addington |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on September 20, 2016, on the Request for Expedited Hearing filed by the employee, Lelia Jones, under Tennessee Code Annotated section 50-6-239 (2015).

The present focus of this case is whether Amedysis is responsible for payment of medical and temporary disability benefits to Ms. Jones. The central legal issue is whether an employer may be responsible for workers' compensation benefits when an injured worker timely reported an injury by accident, but allegedly informed her employer that she did not wish to pursue her claim.[1] For the reasons set forth below, the Court finds Ms. Jones has submitted sufficient evidence from which this Court could conclude she is likely to prevail at a hearing on the merits on the central legal issue and holds she is entitled to medical benefits.

### History of Claim

Ms. Jones worked as a certified nursing assistant (CNA) for the Kingsport,

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an Appendix.

1

Tennessee office of Amedysis, a hospice care provider. Her duties included performing activities of daily living for patients in their homes, including grooming and bathing.

On April 8, 2015, Ms. Jones cared for an Alzheimer's patient who required bathing assistance. She and a co-worker attempted to place the patient in the bathtub at his home, but the patient refused to release his grip on his wheelchair. Ms. Jones twisted and reached to help him let go of the chair while also supporting his weight. Ultimately, Ms. Jones placed the patient in the bathtub and finished bathing him. Afterward, however, she felt pain across the upper part of her back and down towards her hip.

During the hearing, that patient's wife, Frieda Overstreet, who was present when the accident occurred, confirmed Ms. Jones' account. She added that Ms. Jones was very professional and took excellent care of her husband.

Ms. Jones' friend, Rick Phillips, drove her to the homes of her patients that day, as her vehicle was being repaired. After the accident, Ms. Jones went out to Mr. Phillips' car, where Mr. Phillips was waiting, and called Cathy Morenings, the patient's nurse, to report her injury. She placed Ms. Morenings on speaker phone. Ms. Morenings instructed Ms. Jones to contact Tracy Bugher, Amedysis' Business Office Manager, for assistance in reporting her work injury. However, given the distance to Amedysis' office and that it was late in the day, Ms. Morenings told Ms. Jones to see Ms. Bugher the next day. From that point, the parties disagree about the facts surrounding Ms. Jones' report of the accident.

*Facts Re: Report of Injury, Per Ms. Jones*

Ms. Jones testified that she spoke to Ms. Bugher at the Amedysis office the following day, April 9, 2015, and reported her accident. According to Ms. Jones, Ms. Bugher could not find the appropriate report form, but assured her she would get one. Ms. Jones worked her regular schedule that day.

On Friday, April 10, 2015, Ms. Jones testified that she returned to the Amedysis office to obtain the injury report form. Again, Ms. Bugher was unable to locate the form, but assured Ms. Jones she would get it for her. Ms. Jones worked her regular shift that day.

When Ms. Jones returned to the office on Monday, April 13, 2015, she saw a blank injury report form on her desk. When she asked Ms. Bugher about the form, Ms. Bugher allegedly told her that all report forms must be completed within twenty-four hours of the accident, and because Ms. Jones had not done so, no workers' compensation benefits would be paid. According to Ms. Jones, Kris Bogart, the Clinical Manager at Amedysis, was also present at this meeting and re-affirmed what Ms. Bugher told her. Ms. Bogart is Ms. Jones' immediate supervisor.

Mr. Phillips also testified on Ms. Jones' behalf and confirmed her version of events. Mr. Phillips was not present in the Amedysis office for Ms. Jones' meetings with Ms. Bugher and Ms. Bogart. However, he continued to drive Ms. Jones on April 9, 10, and 13, and Ms. Jones discussed what occurred with him.

*Facts Re: Report of Injury, Per Amedysis*

During the hearing, Amedysis offered the testimony of four employees: Ms. Bugher; Ms. Bogart; Sabrina Carroll, a Business Office Specialist; and Renee Skelton, the Director of Operations.

*Sabrina Carroll*

Ms. Carroll testified that she worked at the front desk at the Amedysis office on April 10, 2015, and recalled that Ms. Jones met with Ms. Bugher about a work injury report form. She testified that Ms. Jones put the report form on Ms. Bugher's desk and became very upset, saying, "I don't have time for this; I have patients to see." Ms. Jones then stormed out of the office. Ms. Carroll added that Ms. Bugher attempted to give Ms. Jones the injury report form on more than one occasion, but Ms. Jones refused to accept it.

*Tracy Bugher*

Ms. Bugher testified that she is responsible for handling work injury reports for Amedysis. According to Ms. Bugher, Ms. Jones came to her office on April 10, 2015, and asked to complete paperwork to report her work injury.

Ms. Bugher asked Ms. Jones whether she reported the accident to her immediate supervisor, Ms. Bogart, or to the Director, Ms. Skelton. Ms. Jones responded that she had not, but had informed the nurse, Ms. Morenings. According to Ms. Bugher, she informed Ms. Jones that, in the future, she must report injuries to her supervisor and must complete the injury report form within twenty-four hours of notification. Ms. Bugher then began to process Ms. Jones' report form. She acknowledged that it was a busy day at the office and that she had to take some phone calls during the process. Ms. Bugher testified that Ms. Jones was in her office for approximately ten minutes before she left abruptly without providing any details as to her alleged injury, other than the injury date of April 8, 2015.

Ms. Bugher stated that she cannot file a work injury claim without completing the required documentation, and that she needed additional information from Ms. Jones. After Ms. Jones left, Ms. Bugher went to Ms. Bogart to ask her how to handle the situation. They decided to leave the injury report form on Ms. Jones' desk, along with instructions on how to complete it.

3

On Monday morning, April 13, 2015, Ms. Bugher and Ms. Bogart saw that the forms remained incomplete on Ms. Jones' desk. Ms. Bogart agreed to discuss the issue with Ms. Jones.

Ms. Bugher testified that she never refused to complete Ms. Jones' injury report form, nor did she tell Ms. Jones that she could not file a claim because it had been more than twenty-four hours since she reported the accident. According to Ms. Bugher, the only time she mentioned the twenty-four-hour-rule was when she reminded Ms. Jones about company policy in case she ever had another claim.

### Kris Bogart

Ms. Bogart confirmed that she was Ms. Jones' supervisor at the time of the accident and that Ms. Jones did not report a work injury to her. She stated that she did not learn of the alleged injury until Ms. Bugher informed her of it on April 10, 2015.

Ms. Bogart testified that at no point did she or Ms. Bugher refuse to assist Ms. Jones with her injury report. Rather, Ms. Jones stated that she did not have time to complete the form and stormed out of the office. According to Ms. Bogart, she attempted to call Ms. Jones several times after her abrupt departure, but Ms. Jones did not answer. So, she and Ms. Bugher decided to place the form on Ms. Jones' desk with instructions. Ms. Bogart testified that she never told Ms. Jones that she could not file the claim.

According to Ms. Bogart, Ms. Jones continued to work her regular shift after the April 10 office meeting. Weeks later, Ms. Jones informed Ms. Bogart that she needed her schedule altered so that she could see her chiropractor, but Ms. Jones did not say she was treating for a work injury, nor did she supply any documentation indicating treatment for a work injury.

### Renee Skelton

Ms. Skelton manages the Amedysis office in Kingsport. She confirmed that Ms. Bogart was Ms. Jones' immediate supervisor, and that Ms. Morenings worked as a field nurse and not in a supervisory capacity.

Ms. Skelton was out of the office during the week of Ms. Jones' accident. She returned on the morning of April 13, 2015, when Ms. Bogart informed her of Ms. Jones' injury and refusal to complete the reporting paperwork. Ms. Skelton met with Ms. Jones that morning to discuss the matter. Ms. Jones told Ms. Skelton that she was working her normal shift and "didn't want to fool with [the workers' compensation claim]." Ms. Skelton did not recall discussing that matter with Ms. Jones thereafter.

4

According to Ms. Skelton, Ms. Jones continued to work and did not ask for any accommodations. She explained that the reporting paperwork was available online and could easily be printed out for Ms. Jones' use. She also stated that Ms. Jones could have reported the accident to Ms. Bogart or to her directly, as a supervisor is always on-call, even during weekends and holidays.

*Facts Re: Ms. Jones' Treatment and Work Status*

The parties acknowledge that Ms. Jones continued to perform her work duties for Amedysis, and that Amedysis did not provide a panel of physicians to Ms. Jones or any other workers' compensation benefits.

Ms. Jones sought unauthorized treatment with her chiropractor, Dr. David Perry. Dr. Perry treated Ms. Jones prior to the incident in question. Dr. Perry prepared a letter dated December 4, 2015, in which he confirmed Ms. Jones' treatment in January and February 2010 for her thoracic and lumbar spines, as well as for her hip and knee. (Ex. 2 at 2.) Dr. Perry added, "She was released from these conditions and was not treated again until 5/13/15 for her on the job injuries." *Id.*

Ms. Jones completed a Workers' Compensation Injury Questionnaire for Dr. Perry on November 3, 2015, in which she described the injury, including the date of the accident, as noted above. (Ex. 2 at 3.)

On February 11, 2016, Dr. Perry assessed Ms. Jones with a 23% permanent partial impairment to the body as a whole, per the AMA Guides 6th Edition, and also issued work restrictions that included "unable to push or pull due to the muscles in her arms and shoulders" and "unable to carry more than 20 pounds." (Ex. 2 at 18-20.)

On June 2, 2016, Dr. Perry answered written questions submitted by Ms. Jones' attorney in which he opined 1) Ms. Perry's April 8, 2015 injury was related to her work at Amedysis; 2) that her work-related injury required medical treatment; 3) that Ms. Jones should be off work as a result of her injury from August 14, 2015, to present; 4) that Ms. Jones is at maximum medical improvement for her work injury; and 5) that Ms. Jones requires periodic treatment for her work-related injury. (Ex. 2 at 14-15.)

Ms. Jones also treated at Family Physicians of Johnson City, both before and after the work accident. She came under the care of a nurse practitioner there, Karen Jenkins, and an osteopath, Dr. Andrew Becker, for a variety of health issues, including respiratory and blood pressure concerns.

On August 14, 2015, Nurse Jenkins prepared an off-work excuse for Ms. Jones "Due to anemia, thyroid disease and fatigue, patient will need to be out of work August 17th through August 28th." (Ex. 3 at 81.) Ms. Jones took FMLA leave on the basis of

5

Nurse Jenkins' off-work determination. She testified that she did not return to work with Amedysis afterward. On August 18, 2015, Nurse Jenkins prepared a similar note stating that Ms. Jones, "will be able to return to work/school on 8/31/15." (Ex. 3 at 76.) However, she prepared another off-work slip dated August 28, 2015, excusing Ms. Jones from work through September 11, 2015. (Ex. 3 at 75.)

On September 22, 2015, Nurse Jenkins diagnosed Ms. Jones with "idiopathic scoliosis, cervicothoracic region . . . lumbosacral region." (Ex. 3 at 3.) This notation constituted the first reference at Family Physicians to an ailment in Ms. Jones' spine.

In a final work-status notation dated October 21, 2015, Nurse Jenkins placed Ms. Jones on work restrictions from October 23, 2015, through December 4, 2015, including no lifting, pushing, or pulling more than twenty pounds. (Ex 3 at 90.)

Ms. Jones began treating at East Tennessee Brain and Spine on November 4, 2015, when a physician's assistant (PA), Jason Walls, examined her. (Ex. 1 at 3.) PA Walls noted what he determined to be "soft-tissue musculoskeletal injuries that occurred in April due to this twisting motion [at work]." (Ex. 1 at 15.) He ordered MRIs of Ms. Jones' cervical, thoracic, and lumbar spines, which were performed on November 19, 2015. (Ex. 1 at 38-45.)

In December 2015, the MRI results revealed "degenerative changes without any acute findings." (Ex. 1 at 3.) PA Wells ordered physical therapy for Ms. Jones, which she began on February 18, 2016. (Ex. 1 at 33.) In notes dated March 9, 2016, another PA, Erin Douglas, confirmed Ms. Jones was not a surgical candidate and recommended pain management. (Exhibit 1 at 5.) PA Douglas also addressed causation, saying:

> All of her findings on scans appear to be degenerative in nature; however, she did not have symptoms of pain until after the injury that occurred about a year ago. All of her symptoms are subjective, and we are unable to find any significant findings on her MRI scans.

(Ex. 1 at 7.)

PA Douglas noted Ms. Jones' twenty-pound lifting restrictions that Amedysis could not accommodate. According to Ms. Skelton, Amedysis terminated Ms. Jones in March 2016 because it could not accommodate Ms. Jones' restrictions, and she had exhausted her FMLA leave.

Ms. Jones filed a Petition for Benefit Determination seeking medical and temporary disability benefits on November 3, 2016. (T.R. 1 at 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. (T.R. 2 at 1.) Ms. Jones filed a Request for Expedited

Hearing on April 26, 2016, but did not attach the required affidavit. (T.R. 4 at 2.) Upon Amedysis' Motion to Dismiss, the Court denied the Request for Expedited Hearing without prejudice on July 14, 2016. (T.R. 4 at 4.) Ms. Jones then filed a second Request for Expedited Hearing, with an Affidavit, on July 25, 2016. The Court conducted the Expedited Hearing on September 20, 2016.

At the Expedited Hearing, Ms. Jones argued that Amedysis intentionally refused to provide her with an injury report form so that she would be unable to complete it before the twenty-four-hour time limit expired. She contends Amedysis relied on the twenty-four-hour rule to support its refusal to provide her with workers' compensation benefits. As a result, she asserts that she reasonably sought unauthorized medical treatment, for which Amedysis should reimburse her. Ms. Jones relies on Dr. Perry to support her positon that her work injury necessitated her treatment. She requests temporary disability benefits at the rate of $306.54 for the time the injury prevented her from working, in addition to on-going medical treatment for her back, shoulder, and hip condition.

Amedysis asserted that it attempted multiple times to provide Ms. Jones with an injury report form, and took no action to avoid responsibility for her reported injury. Multiple defense witnesses claimed that Ms. Jones stormed out of her meeting with Ms. Bugher before her injury report form could be completed, and that the form could not be submitted without information that only Ms. Jones could provide. When Ms. Jones informed Ms. Skelton that she did not wish to pursue her claim, Amedysis took no further action. Ms. Jones continued to work without complaint, which led Amedysis to conclude that the matter was resolved.

Amedysis further argued that Ms. Jones' time off work was necessitated by Ms. Jones' idiopathic conditions unrelated to any work accident, including degenerative conditions in her spine, scoliosis, and osteoarthritis. Amedysis asserted that Ms. Jones is unable to establish that she suffered an aggravation of her pre-existing condition, as the medical records do not show that her job duties were more likely than not the primary cause of her condition. It requested that Ms. Jones' claim for benefits be denied.

### Findings of Facts and Conclusions of Law

As the injured employee seeking benefits, Ms. Jones has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). Ms. Jones need not prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). However, at an expedited hearing, she has the burden to come forward with sufficient evidence from which the trial court

7

can determine that she is likely to prevail at a hearing on the merits. *Id.*

To be compensable under the Workers' Compensation Law, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(14) (2015). The term "injury" is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* An injury is accidental only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment. Tenn. Code Ann § 50-6-102(14)(a) (2015).

Ms. Jones alleged an injury arising from a specific work-related lifting incident that occurred at the Overstreet home on April 8, 2015. The incident is confirmed through the testimony of Mrs. Overstreet and statements attributed to Ms. Jones in the medical records. Amedysis offered no contrary testimony at the hearing and, at least at this point, does not dispute that the accident occurred.

There also appears to be no dispute that Ms. Jones provided actual notice of the work accident to Amedysis within the thirty-day time period prescribed in Tenn. Code Annotated section 50-6-201(a)(1) (2015). She immediately, even though improperly, reported the accident to her patient's nurse, who was not her supervisor. However, by Amedysis' own account, it received actual notice of the injury no later than two days after the accident on April 10, 2015. In light of the above, the Court finds that a work accident occurred and Ms. Jones timely reported it to Amedysis.

The parties dispute the facts surrounding the preparation of the formal written accident report. After hearing the witnesses at the Expedited Hearing, the Court credits the testimony offered by Ms. Carroll, Ms. Bugher, Ms. Bogart, and Ms. Skelton. The Court finds that, for whatever reason, Ms. Jones became agitated with the process of completing the written report and abruptly left the Amedysis office, leaving the form unfinished. The next business day, April 13, 2015, Amedysis' Director, Ms. Skelton, discussed the alleged accident with Ms. Jones, and Ms. Jones informed her that she "didn't want to fool with [the workers' compensation claim]." Ms. Jones continued to work her regular shift and made no further request for workers' compensation benefits. Amedysis did not pursue the matter further.

Ms. Jones requests temporary disability and medical benefits, including reimbursement for the unauthorized medical treatment she obtained to this point. Before an employer can be held responsible for unauthorized medical expenses, an assessment must be made as to whether, under the circumstances, the injured worker acted *reasonably* in seeking unauthorized care. *U. S. F & G. Co. v. Morgan*, 795 S.W.2d 653, 655 (Tenn. 1990).

The Court finds Amedysis acted reasonably in light of the above facts and Ms. Jones did not. Amedysis did not refuse to complete Ms. Jones' injury report; Ms. Jones did. At that point, Ms. Jones returned to work and continued to work until August 15, 2015. The Court finds Ms. Jones did not express a need for medical treatment for a work injury when she reported the incident, refused to complete an incident report, and then stormed out of the building. Later, she told Ms. Skelton she did not want to fool with the matter.

Under these circumstances, The Court refuses to hold Amedysis responsible for payment of any past medical benefits or temporary disability benefits at this time. Ms. Jones temporarily abandoned her claim, as is evident from her discussion with Ms. Skelton on April 13, 2015, and any unauthorized treatment she obtained afterward remains her responsibility.

However, the Court finds Ms. Jones timely provided notice of her alleged injury to Amedysis and filed her Petition for Benefit Determination within the statute of limitations. Her claim remains valid at this point. Moreover, the Court finds that Dr. Perry's statements regarding the cause of Ms. Jones' present condition constitute sufficient medical evidence from which the trial court can determine that she is likely to prevail at a hearing on the merits.

Given the evidence presented, the Court holds that Amedysis must provide Ms. Jones with an appropriate panel of physicians in accordance with Tennessee Code Annotated section 50-6-204 (2015). The Court reserves any issue concerning temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Amedysis shall provide Ms. Jones with a panel of physicians in accordance with Tennessee Code Annotated section 50-6-204 (2015). The parties shall supply said physician with medical records to date.

2. Amedysis is not responsible for past temporary disability benefits or for reimbursement of unauthorized medical expenses incurred by Ms. Jones at this time.

3. This matter is set for Initial (Scheduling) Hearing on November 7, 2016, at 2:00 p.m. Eastern.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of

compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.


**ENTERED this the 27th day of September, 2016.**


/s/ Brian K. Addington
**Judge Brian K. Addington**
**Court of Workers' Compensation Claims**


Initial (Scheduling) Hearing:

A Scheduling Hearing has been set with **Judge Brian K. Addington, Court of Workers' Compensation Claims. You must call toll-free at 855-543-5044 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's

11

position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Medical Records – East Tennessee Brain and Spine;
2. Medical Records – Dr. David Perry;
3. Medical Records – Johnson City Family Physicians;
4. First Report of Work Injury;
5. Wage Statement;
6. Medical Bills (For Identification Only);
7. Amedysis Form, Return to Work Authorization (For Identification Only);
8. Ms. Jones' Activity Sheet;
9. Incomplete Accident Reporting & Treatment Form; and
10. Amedysis-completed Accident Reporting & Treatment Form

Technical record:[2]
1. Petition for Benefit Determination, November 3, 2015;
2. Dispute Certification Notice, December 14, 2015;
3. Motion to Dismiss Plaintiff's Request for Expedited Hearing for Failure to File Affidavit, May 4, 2016;
4. Order Denying Request for Expedited Hearing, July 14, 2016;
5. Request for Expedited Hearing, July 25, 2016; and,
6. Order Re-Setting Expedited Hearing, August 19, 2016.

---

[2] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order for Medical Benefits was sent to the following recipients by the following methods of service on this the 27th day of September, 2016.

| Name | Certified Mail | Via Email | Service Sent To: |
|---|---|---|---|
| Frank Slaughter, Esq. Attorney for Ms. Jones | | X | flsjrlaw@yahoo.com |
| Leslie Bishop, Esq. Attorney for Amedysis | | X | lbishop@lewisthomason.com |

/s/ Penny Shrum
**Penny Shrum, Clerk of Court**
**WC.CourtClerk@tn.gov**

14