FILED
Sep 22, 2021
08:52 AM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS





## TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **RHONDA KNOTT,** | ) | **Docket No. 2021-05-0288** |
| **Employee,** | ) | |
| **v.** | ) | |
| | ) | |
| **GREAT LAKES CHEESE OF TN.,** | ) | **State File No. 101548-2020** |
| **INC.,** | ) | |
| **Employer,** | ) | |
| **And** | ) | |
| **ZURICH AM. INS. CO.,** | ) | **Judge Dale Tipps** |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER DENYING BENEFITS

The Court held an Expedited Hearing on September 14, 2021, on Ms. Knott's request for additional temporary disability benefits, medical treatment, and penalties. To receive these benefits, she must show that Great Lakes wrongfully suspended her temporary disability payments and that her decision to seek unauthorized medical treatment was justified. For the reasons below, the Court holds that Ms. Knott was unable to meet this burden and denies the requested benefits at this time.

### History of Claim

Ms. Knott fell while working for Great Lakes on October 27, 2020. In her accident report, she listed injuries to her left elbow, hip, knee, and the left side of her back. Great Lakes sent her to a walk-in clinic, which noted complaints of cervical, thoracic, lumbar, left-hip, and left-knee pain. After two visits, the clinic referred her to an orthopedic specialist. Ms. Knott selected Dr. Michael Bowman from a panel and started treatment with him in January 2021.

Dr. Bowman's notes show Ms. Knott's complaints as "pain radiating from her neck into her left arm and from her back down into her leg." Testing showed weakness and abnormal reflexes in the arm and leg, which he described as radiculopathy. Dr. Bowman took Ms. Knott off work and ordered cervical and lumbar MRIs.

1

When Dr. Bowman next saw Ms. Knott, he noted that Great Lakes denied the cervical MRI, but the lumbar MRI showed a bulging disc and stenosis. He gave her an epidural steroid injection, repeated his request for a cervical MRI, and continued his out-of-work order.

After the cervical MRI was performed, Dr. Bowman observed some mild to moderate pathology and ordered EMG testing. He also ordered continuing physical therapy and restricted Ms. Knott to a "sitting job only." On March 8, he wrote, "I am going to review her EMG and then the patient states she would like to be evaluated by a surgeon to see if there are any surgical options to help her. Pending the results of the EMG, I will make that referral. I will leave her restrictions the same." The parties presented no evidence regarding why Ms. Knott never returned to Dr. Bowman after the EMG was performed.

On March 29, Ms. Knott filed a Petition for Benefit Determination seeking, among other relief, a "panel for further treatment regarding left leg/knee."

While the Petition was pending, Ms. Knott sought unauthorized treatment with Dr. Colin Looney on April 28, where she described "pain localized to the left buttock, groin, and anterior hip, radiating distally through the anterior aspect of the entire left lower extremity." Dr. Looney's impression was lumbar radiculitis, left-knee effusion, and left-knee internal derangement. He ordered a knee MRI and referred her for a lumbar evaluation by spine doctors in his practice. Ms. Knott returned on May 3, and Dr. Looney said the MRI showed a complex lateral meniscus tear. He recommended a knee arthroscopy but suggested she have the spine evaluation first.

Ms. Knott did not notify Great Lakes of her treatment with Dr. Looney until May 12. Great Lakes then asked Dr. Bowman to refer Ms. Knott to Dr. Roderick Vaughan for evaluation/treatment of her left knee. The mediator issued a dispute resolution statement on May 18 that said, "The requested wage statement and itemization of paid benefits has been provided. The Employee was referred to Dr. Vaughan for an evaluation of the knee and the Employee has been given an appointment for May 24, 2021."

However, when Ms. Knott went to Dr. Vaughan's office, he canceled the appointment and refused to see her. Great Lakes then offered her a panel of orthopedic specialists on June 2, but she refused to make a selection. Instead, she notified Great Lakes of her intent to continue treating with Dr. Looney. Great Lakes then suspended Ms. Knott's temporary disability benefits, which it had been paying ever since Dr. Bowman first took her off work.

Ms. Knott filed the current Petition for Benefit Determination seeking temporary disability benefits from the date they were terminated through the present. She contended

2

that Great Lakes failed to provide a panel for her knee injury for almost eight months, and this justified her refusal to make a panel selection. Therefore, Ms. Knott argued that it was improper for Great Lakes to suspend her benefits. She also requested an order compelling Great Lakes to provide the knee surgery, with Dr. Looney designated as her authorized physician, as well as a panel of lumbar spine specialists and reimbursement of her expenses related to Dr. Looney's treatment. Finally, Ms. Knott requested several penalty assessments.

Great Lakes contended that Ms. Knott is not entitled to any additional temporary disability benefits. It argued it properly suspended her benefits because she refused to accept offered medical treatment by declining to select a doctor from the panel. Great Lakes further maintained that it consistently provided appropriate medical benefits from the outset of the claim. As a result, it should not be obliged to authorize Dr. Looney as a treating physician.

## Findings of Fact and Conclusions of Law

For the Court to grant Ms. Knott's requests, she must prove she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2020); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Great Lakes does not currently contest the compensability of Ms. Knott's knee injury. Therefore, the question is whether she is likely to show she is entitled to the additional requested benefits.

### *Medical Benefits*

Ms. Knott requested several medical benefits, including designation of Dr. Looney as her authorized physician, payment of past medical expenses, knee surgery, and a lumbar spine panel. All these requests stem from her unauthorized treatment with Dr. Looney.

Tennessee Code Annotated section 50-6-204(a)(1)(A) provides, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Further, "the injured employee shall accept the medical benefits . . . provided that in any case when the employee has suffered an injury and expressed a need for medical care, the employer shall designate a group of three (3) or more independent reputable physicians . . . from which the employee shall select one (1) to be the treating physician." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i). Ms. Knott's treatment with Dr. Bowman was the result of both parties' compliance with these provisions. However, she did not choose Dr. Looney from a panel, and his treatment was unauthorized.

Citing *U.S. Fidelity & Guaranty Co. v. Morgan*, 795 S.W.2d 653, 655 (Tenn.1990), Ms. Knott correctly argued that, "Where the employer fails to give the employee the

3

opportunity to choose the ultimate treating physician from a panel of at least three physicians, he runs the risk of having to pay the reasonable cost for treatment of the employee's injuries by a physician of the employee's choice." However, the court went on to explain that the decision "turns on the issue of whether, under the circumstances, the employee was justified in obtaining further medical services, *without first consulting the employer or its insurer*." *Id.* (emphasis added).

Ms. Knott admitted that she did not notify Great Lakes about Dr. Looney until after her last visit with him, and she presented no proof that Great Lakes knew of her intent to see him. Further, she admitted that, although she complained about her pain and lack of progress, she never informed Great Lakes that she needed to see a doctor about her knee or requested another physician. However, she contended her treatment with Dr. Looney was justified because she consistently complained of left-knee problems to Dr. Bowman, and he failed to address them. This contention is unpersuasive for two reasons.

First, it is not clear that Ms. Knott specifically discussed her left-knee problems with Dr. Bowman. Undoubtedly, she reported left-knee pain in her accident report and in the walk-in clinic records, but Dr. Bowman's records show that she described her problem as pain radiating "from her back down into her leg." In his deposition, Dr. Bowman testified that Ms. Knott never specifically discussed her knee. Further, his examination was limited by her pain responses, so he never suspected a structural injury to the knee. Instead, he felt her leg pain was radicular in nature.

Dr. Bowman's recollection is consistent with his records and those of the nurse case manager, who confirmed reports of pain, numbness, weakness, and tingling "down the left leg to the foot." Further, even when Dr. Looney first saw Ms. Knott, he noted "pain localized to the left buttock, groin, and anterior hip, radiating distally through the anterior aspect of the entire left lower extremity." Like Dr. Bowman, Dr. Looney's impression was lumbar radiculitis, although some edema around the knee led him to order an MRI that revealed the meniscal tear.

The second problem with Ms. Knott's argument is that, even if she complained to Dr. Bowman about a specific knee problem, no evidence suggests that Great Lakes knew about the problem until she filed her first Petition. The essence of Ms. Knott's position is that any information available to a treating doctor should be imputed to the employer providing that treatment. However, she provided no authority in support of that contention, and the Court finds it unreasonable to expect an employer to read the authorized physician's records, reach its own medical conclusion regarding a condition that is not identified in those records, and provide treatment or a referral that the doctor never requested.

Thus, the Court finds that Great Lakes had no notice of Ms. Knott's knee problem or her desire for additional treatment until she filed her first Petition for Benefit

4

Determination on March 29. This raises the question of whether she was immediately entitled to a panel of knee specialists at that moment. The Court finds that she was not.

This is not a case where an employer failed to provide a panel at the outset of the claim. Great Lakes had already provided a panel of specialists, and Ms. Knott had not only chosen Dr. Bowman, but also she had treated with him for several weeks. Once Great Lakes became aware of her knee complaints, it had no reason to assume that her authorized physician would be unable to evaluate or treat the problem. The Court has no evidence to suggest that Great Lakes denied Ms. Knott an opportunity to return to Dr. Bowman, and it has insufficient evidence to find that he knew about her specific complaints but refused to address them. Without this proof, her decision to seek treatment with Dr. Looney instead of her authorized doctor without first consulting Great Lakes was not justified. For this reason, the Court finds Ms. Knott is unlikely to prove entitlement to reimbursement for that treatment.

The same analysis precludes Ms. Knott's request that Dr. Looney be designated as her authorized physician. Tennessee law provides that, once a worker has "justifiably engaged a doctor on [her] own initiative," the employer may not cut off her right to treat with that doctor by belatedly offering medical treatment. *Goodman v. Oliver Springs Mining Co., Inc.*, 595 S.W.2d 805, 808 (Tenn. 1980). However, as noted above, Ms. Knott's decision to treat with Dr. Looney was not justified under the circumstances. Thus, the Court finds she is unlikely to establish him as her authorized doctor.

*Temporary Disability Benefits*

Ms. Knott also requested payment of her suspended temporary disability benefits. Great Lakes contended it properly suspended payment of those benefits because she refused to select a doctor from the orthopedic panel it offered at the conclusion of her first Petition for Benefit Determination. Ms. Knott, on the other hand, argued that the wrongful termination of her benefits was an "attempt to bully and pressure her into accepting a compromise offer."

Tennessee Code Annotated section 50-6-204(d)(8) provides, "If the injured employee refuses to . . . accept the medical or specialized medical services that the employer is required to furnish under this chapter, the injured employee's right to compensation shall be suspended and no compensation shall be due and payable while the injured employee continues to refuse." Great Lakes agreed that her restrictions would entitle her to temporary total disability benefits, were it not for her noncompliance. Thus, the only question is whether Great Lakes wrongfully terminated her disability benefits.

Ms. Knott informed Great Lakes about her left-knee treatment with Dr. Looney on May 12, and Great Lakes referred her to Dr. Vaughan by May 18. She agreed to accept the referral and went to her appointment on May 24. Unfortunately, Dr. Vaughan canceled

5

the appointment and refused to see Ms. Knott, and her disappointment and frustration are understandable. However, these issues occasionally arise in workers' compensation cases, and the parties presented no evidence to suggest Great Lakes was responsible for the problem. Further, Great Lakes provided a replacement panel the next week. Taken alone, this delay would not normally justify an employee's refusal to accept the proffered panel.

Ms. Knott testified that she chose not to make a panel selection because she was frustrated with canceled appointments. However, she presented no details of any canceled appointments or problems with her medical benefits other than the visit with Dr. Vaughan. Without those facts, the Court cannot evaluate whether her refusal to accept benefits was reasonable or that Great Lakes's termination of benefits was wrongful. Therefore, she does not appear likely to prove entitlement to temporary disability benefits until she makes a panel selection.

*Penalty*

As noted above, Ms. Knott has not proven she is likely to succeed on her claims for additional medical and temporary disability benefits. The Court, therefore, will not impose a penalty or make the requested penalty referrals.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Knott's claim against Great Lakes Cheese for additional medical and temporary disability benefits, as well as penalties, is denied at this time.

2. This case is set for a Status Hearing on December 1, 2021, at 9:00 a.m. Please call toll-free at 855-874-0473 to participate. Failure to call might result in a determination of the issues without your further participation. All conferences are set using Central Time.

**ENTERED September 22, 2021.**

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Affidavit of Rhonda Knott
2. Employee's Indexed Medical Records

6

3. June 21, 2021 letter to Dr. Looney
4. August 23, 2021 letter to Dr. Bowman
5. Requests for Admissions to Ms. Knott
6. Dr. Bowman's deposition transcript
7. Employee's Report of Incident and Injury
8. March 29, 2021 Petition for Benefit Determination
9. Dr. Bowman's referral to Dr. Vaughan
10. Nurse case manager notes
11. Emails between counsel
12. May 27, 2021 Deposit Notice
13. Rule 72 Declaration of Joel Dean

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Filing of Witness List
5. Employer's Filing of Exhibit List
6. Employee's Witness and Exhibit List
7. Employer's Pre-Hearing Brief
8. Employee's Pre-Hearing Brief

## CERTIFICATE OF SERVICE

I certify that a copy of the Expedited Hearing Order was sent as indicated on September 22, 2021.

| Name | Certified Mail | Fax | Email | Service sent to: |
|------|------|------|------|------|
| Adam Selvidge, Employee's Attorney | | | X | Adam@reasonoverlaw.com |
| Allen Callison, Employer's Attorney | | | X | Allen.callison@mgclaw.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____      ☐ Motion Order filed on _____

☐ Compensation Order filed on_____      ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*